(No. 33897.— )
OSCAR L. PARIS COMPANY *et al.,* Appellees, *vs.* RICHARD J. LYONS, Director of Revenue, *et al.,* Appellants.

*Opinion filed May 23, 1956.*

LATHAM CASTLE, Attorney General, or Springfield, (WILLIAM C. WINES, RAYMOND S. SARNOW, and A. ZOLA GROVES, of counsel,), for appellants.

LEONARD H. LAWRENCE, and ARTHUR MORSE, both of Chicago, for appellees.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

The question presented here is whether the plaintiffs are engaged in a service occupation so as to escape the incidence of the Illinois retailers occupation tax, or are they engaged primarily in the "sale of carpeting" at retail so that they incur liability for that tax. The master concluded and the circuit court of Cook County held that plaintiffs were engaged primarily in a "service, not a selling" occupation. The trial court directed the return of the taxes paid under protest and enjoined the future collection of such tax, thus this appeal by the Director to this court.

The complaint filed herein avers that the plaintiffs are skilled craftsmen engaged in a service occupation when, by contract, they furnish and install carpet on special order to fit a certain floor area; that specially trained measuremen draw plans of the floor area to be covered; specially trained

craftsmen cut, trim and sew the carpet together to make a complete product ready for installation; specially trained craftsmen prepare the floor area to be covered by cutting and installing linings or paddings to specification, and finally the carpet is affixed to the floor by pulling, cementing and nailing; that such carpeting after being cut, sewn and prepared to order has no value except as salvage and no use other than that for which it was made. In the answer of the defendants, strict proof was prayed, and they denied that such carpeting only had a salvage value.

On behalf of the plaintiffs, Bryan P. Coughlan, an expert of 30 years experience testified as follows: A layout man goes to the job, takes measurements and develops a drawing to scale. Measuremen sometimes do this work on a rough chart, and the layout men then make the scaled drawings. The layout men then determine how to run and lay the material so that proper wearing will result, carpet having a pitch to the pile which should run a certain way to get maximum wear, and to achieve this the layout men must determine the weight and flow of traffic on the area to be covered. The layout men must determine from the blue prints the proper widths of material to be used and how the pattern should be matched. He must know what is known as a check pattern and whether it will match upon itself; how to match a drop pattern in every way, a third against a second breadth; how in the drop pattern one must cut one, two and five breadths, then get even breadths to avoid overlapping pattern; how a 36-inch drop pattern, for instance, will cut without waste in multiples of 18 inches whereas a 36-inch set pattern can only be cut in multiples of three feet. For a room 16 feet long using a 36-inch set pattern the material would normally be cut in 18-foot lengths, but an experienced layout man properly handling such material will cut this carpet in 16-foot-six-inch lengths. The layout man employed by plaintiffs has been employed by them for 40 years, and one cannot

hold himself out as a skilled layout man without 20 to 25 years experience. After the layout man completes his work, the cutter then cuts the carpet from plans to size and dimensions. A carpet cutter must serve a three-year apprenticeship as well as formal schooling; and a carpet sewer cannot perform his work alone unless he has served three years as an apprentice. The carpet layer has a duplicate set of plans and after spreading his lining he spreads the carpet, starting on what is known as the straight side; fastens the carpet to the floor; draws it taut with a power stretcher from one joining point to the next for there must be even tension to obviate wrinkles and excessive wear. The layer must have a three-year apprenticeship under a master mechanic and is required to attend school, and after many years of experience he may obtain a master card.

It was further explained that carpet of the same color varies in shading to such an extent that care must be exercised not to use carpet from rolls made on different looms, and from rolls dyed at different times; that looms have different tensions creating varying shades; that no two wools accept the same color with the same result. The foregoing testimony was corroborated by Aaron Greenfield, a partner in Contractor Furniture and Carpet Company, and one with 20 years experience in the contract carpeting business. Both witnesses testified that if for any reason such carpeting thus processed is not used on the job it has only a salvage value ranging from 10 to 25 per cent. This proof was not contradicted.

The master found for the plaintiffs and then there was a referral to the master in chancery to hear proof on the salvage issue. The additional proof adduced made no substantial change in the factual picture. The master's final decree found that the plaintiffs were engaged in the business of furnishing and installing carpeting to the special order and requirements of their customers; that plaintiffs' contracts with their customers involved the rendering of

special services by way of advice, recommendation, measurement and cutting and matching of carpet for specific installation, all by men of special training; that such carpeting thus affixed has no value, commercial or otherwise, except as salvage.

Both sides agree that the facts are undisputed; that plaintiffs are engaged in the special order business; that should the customer not take the carpet, it would be sold for salvage with only a small return. Defendants, however, state that the testimony of Aaron Greenfield and Coughlan was "arrantly unbelievable." They question the truth of the statement that a carpet sewer and a layout man must be men of skill and long experience. It does seem that those witnesses did not leave much unsaid in describing the process of selling carpeting to the special order of their customers. In the complete absence of any contradictory evidence we are compelled to hold that plaintiffs' operations necessarily involve special skill, talents, training and experience. The defendants were present at two separate hearings and they failed to introduce any proof that challenged the factual contentions of the plaintiffs.

The defendants here rely solely upon the case of *Sterling Steel Casting Co.* v. *Department of Revenue,* 7 Ill.2d 244, wherein it was held that the manufacturer of steel castings on a special order of customers, which customers furnished the patterns, was not engaged in a service occupation but was engaged in the occupation of selling tangible personal property at retail and within the purview of the Retailers' Occupation Tax Act.

In distinguishing the *Ingersoll case* (*Ingersoll Milling Machine Co.* v. *Department of Revenue,* 405 Ill. 367,) the court, in the *Sterling case,* said at page 248: "Here the record does not show that plaintiff rendered any engineering or technical service in conceiving or engineering the steel castings produced by it. Indeed, the only evidence of engineering or technical service relating to design is the

testimony of plaintiff's sales manager to the effect that plaintiff helps and suggests in the method the pattern—not the castings—should be made. The patterns which plaintiff uses are produced by its customers through their own engineers or skilled technicians or they may be purchased by the customer from a pattern maker. Plaintiff is not engaged in the fabrication, design or manufacture of patterns. Its business is the volume production of relatively inexpensive steel castings. Such technical skill as is involved relates entirely to production activities, and no evidence was introduced to show that the skill involved depends in any degree upon whether standard or special order castings are produced."

It seems to us that this record presents a problem that is distinguishable from the one in the *Sterling case*, in that although the commodity is sold on special order, the *Sterling case* merely involved the production and delivery of items on a mass production factory basis according to patterns furnished it by the customers, whereas in the present case the special skills of the plaintiff in determining and selecting the pattern, color and dye of carpeting and in properly cutting, sewing and fitting the carpeting together and installing the same is contracted for. In this case the customers hire the plaintiffs to accomplish a certain end result for a given price, the plaintiffs being relied upon to use specialized skill, knowledge and experience to accomplish such result. In the *Sterling case* the customer orders from the plaintiff on the basis of quotations previously submitted a certain quantity of a designated article, the detailed specifications of which are determined and furnished by the customer.

In *Mahon* v. *Nudelman*, 377 Ill. 331, this court in holding the occupation of a furrier not within the Retailers' Occupation Tax Act on a fur repair, said: "It is a matter of general knowledge that a fur garment in need of repair cannot generally be restored to a serviceable condition with-

out the installation of some material, either new or used, and that such repairing requires the skill of the furrier to match the fur as well as to fit linings, etc."

It will be noted therein that the skill of the furrier in matching furs and lining was a decisive factor. Subsequently, the Department of Revenue changed its regulations to hold furriers not liable for tax on receipts from sale of fur coats, capes, *etc.*, made to the special order of the customer. Quite analogous is the situation confronting us. The plaintiffs are engaged in the measuring, matching, sewing, cutting, fitting and installing carpeting much the same as the furrier matches, cuts, sews and fits furs.

Another parallel is that of the custom tailor who makes a suit to order from a bolt of cloth. Rule No. 23 regulating Custom Tailors which has been in effect 20 years reads as follows: "Custom tailors who, in their own places of business, produce clothing on special order to meet the particular needs of the purchaser, by styling, cutting and fitting, so that such clothing is of value and use only to the person for whom it is made, are engaged primarily in a service occupation. To the extent to which they engage in such service occupation, they are not engaged in the business of selling tangible personal property to purchaser for use or consumption within the meaning of the Act and do not incur retailers' occupation tax liability measured by any of their receipts therefrom, including receipts from both labor and tangible personal property."

Ten years later Rule No. 20 was promulgated providing as follows: "Persons who produce portieres, drapes, curtain, marquee curtains, venetian blinds, window shades, screen door, window screens, storm doors, storm windows, slip covers, tents, metal and canvas awnings, canopies, rollers, tarpaulins and other similar items on the special order of the purchaser and in such a way as to make such items have use or value (other than salvage value) only to the purchaser, are engaged primarily in a service occupa-

tion. To the extent to which they engage in such service occupation, they are not engaged in the business of selling tangible personal property to purchasers for use or consumption. Consequently, they are not required to remit Retailers' Occupation Tax measured by any of their receipts from engaging in such service occupation, including receipts from both labor and tangible personal property."

We are of the opinion that there is no basic difference between custom tailored carpets and custom made draperies, curtains, slip covers, *etc.* The exemption arises under this rule even though the service of installation is not essential.

Another regulation, No. 25, covering an operation somewhat less similar, yet recognizing the skill factor, reads as follows: "Persons who sell monuments, grave markers and the like, with respect to which they render any service, such as installing, inscribing, actually producing the stone on the special order of a particular customer, or other service, are engaged in a service occupation and are not required to remit Retailers' Occupation Tax measured by their receipts from such transactions, including receipts from both labor and tangible personal property."

Finally, Bulletin No. 9, which is accessory to Rule No. 10 of the Department, deals with parts installed in an airplane by those engaged in such an occupation. Therein it can be noted that items of personalty such as cabins, wings and engines which are quite expensive, are not taxable, even though the cost of installation, necessarily involving skill, is appreciably less.

It is appropriate for this court to give consideration to the foregoing regulations in resolving the problem before us. In *Skidmore* v. *Swift & Co.* 323 U.S. 134, where the effect of rulings, interpretations and opinions of the Administrator under the Fair Labor Standards Act was considered, the United States Supreme Court said: "Good administration of the Act and good judicial administration alike require that the standards of public enforcement and those

for determining private rights shall be at variance only where justified by very good reasons. The fact that the Administrator's policies and standards are not reached by trial in adversary form does not mean that they are not entitled to respect. This Court has long given considerable and in some cases decisive weight to Treasury Decisions and to interpretative regulations of the Treasury and of other bodies that were not of adversary origin. We consider that the rulings, interpretations and opinions of the Administrator under this Act, while not controlling upon the courts by reason of their authority, do constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance."

It seems clear that the plaintiffs are in an occupation analogous to several that are exempted by rules of long standing of the Department.

Taxing laws are to be strictly construed and they are not to be extended beyond the clear import of the language used. If there is any doubt in their application they will be construed most strongly against the government and in favor of the taxpayer. *Peoples Gas Light Co.* v. *Ames,* 359 Ill. 152.

The decree of the circuit court entered herein should be and is affirmed.

*Decree affirmed.*