Samuel S. Cohon, Appellant, v. Oscar L. Paris Company, Appellee.

Gen. No. 47,198.

First District, First Division.
March 10, 1958.
Released for publication May 6, 1958.

Branko M. Steiner, of Chicago, for appellant.

Sonnenschein, Lautmann, Levinson, and Rieser, Carlin & Nath, of Chicago (David Levinson, Charles D. Satinover, and Edward L. Lembitz, of counsel) for appellee.

JUSTICE McCORMICK delivered the opinion of the court.

This appeal is taken from an order of the Circuit Court of Cook county sustaining defendant's motion to strike plaintiff's amended complaint and dismissing the suit.

The action was filed as a class action on behalf of the plaintiff and others similarly situated who had made payments to the defendant for carpeting and installation, including 3 per cent Illinois retailers' occupation tax. On May 23, 1956 the Supreme Court of Illinois in Oscar L. Paris Co. v. Lyons, 8 Ill.2d 590, held that the business of the Oscar L. Paris Company was not subject to the retailers' occupation tax, following which the state treasurer of the state of Illinois refunded by warrant all taxes which had been illegally collected from and paid by the defendant. The defendant had made a practice of billing its customers for the tax as a separate item in addition to the charge made by the defendant for carpeting, padding and installation thereof. Afterward the defendant still persisted in its practice of separately enumerating on its bills a separate charge of 3 per cent for the retailers' occupation tax. The plaintiff on June 8, 1956 purchased from the defendant a wall-to-wall carpeting and installation job for the sum of $189.33, plus 3 per cent Illinois retailers' occupation tax ($5.68), which sums were paid by the plaintiff to the defendant.

In the amended complaint it is alleged that the sums representing the charges for taxes paid by the plaintiff and other customers to the defendant constituted a common fund belonging to them and held in trust by the defendant for them, and the plaintiff further alleges in the complaint that the suit is filed on behalf of himself and all others similarly situated, who had since 1949 purchased wall-to-wall carpeting from the defendant and had been charged and paid to it the

23

tax as a separate item in addition to the charge made by the defendant for the carpeting and padding, and installation thereof. The defendant on December 10, 1956 filed a motion to strike the amended complaint setting up, among other grounds, that no cause of action was stated since it appears from the complaint that the plaintiff and other customers of the defendant whom the plaintiff seeks to represent voluntarily and without compulsion paid to the defendant the money sought, and that a proper basis for a class action was not set out inasmuch as the plaintiff and other customers of the defendant whom he seeks to represent each had separate and distinct transactions with the defendant, and that the purchase and payment of the tax by the plaintiff took place after the decision of the Supreme Court in Oscar L. Paris Co. v. Lyons, supra, holding the tax illegal. The trial court entered an order striking the amended complaint and dismissing the action, from which order this appeal is taken.

To determine whether or not plaintiff's amended complaint states a cause of action we will consider first the right of the customers of the defendant to recover from it the sums of money paid by them to the defendant separately billed, designated and earmarked as a tax, which sums of money were paid by the defendant to the state in satisfaction of its supposed liability under the Illinois Retailers' Occupation Tax Act. It has been held that the tax is imposed by virtue of that Act on persons engaged in the business of selling at retail tangible personal property to purchasers for use and consumption and that it is not a tax on the property itself. It is a tax on the occupation and not on the sale, though the gross receipts from the sales are utilized as a measure of the tax to be assessed. The retailers are not made the agents of the state or the Department of Finance to collect the tax from purchasers and pay it over, but the tax is imposed

24

on them and they are the ones who are required to pay it. People's Drug Shop, Inc. v. Moysey, 384 Ill. 283; Svithiod Singing Club v. McKibbin, 381 Ill. 194; Mahon v. Nudelman, 377 Ill. 331; Winter v. Barrett, 352 Ill. 441. The defendant passed this tax on to the consumer. The device of billing the consumer separately for the tax undoubtedly was used because, if the sum equivalent to the 3 per cent tax had been added to the price, the defendant would have been required to pay the tax on the sum so added as well as upon the residue. The money collected by the defendant was not collected as a composite part of the price; it was collected for a specific and definite purpose. After the Illinois Supreme Court in Oscar L. Paris Co. v. Lyons, supra, held that the tax was one not required to be paid by the defendant, the tax money which the state returned to the defendant was money which in equity and good conscience did not belong to the defendant but belonged to the purchasers who had paid it. In Gannaway v. Barricklow, 203 Ill. 410, Barricklow, the administrator of an estate, was called before the board of review of Coles County and was informed that his intestate owed certain back personal property taxes. The Board presented him with a bill and told him it must be paid by a certain date or there would be an additional 10 per cent penalty. The administrator paid the taxes. Subsequently he learned that the taxes which he had paid were not due because they never had been levied or extended by the county clerk. He then brought suit in assumpsit against the county treasurer to recover the money paid. The court held that in this case the money could be recovered back because there was no tax in existence. The administrator had acted in good faith and under a misapprehension as to the existence of the alleged liability, and the court says:

"Money paid under a pretense of that character may be recovered in an action for money had and

25

received. (Whitton v. Barringer, 67 Ill. 551.) The
money being in the appellant's hands without author-
ity of law, it belonged to the appellee, by whom it was
paid. Appellant had no right to it, but was equitably
bound to refund it. . . . Even where a tax is legally
levied and voluntarily paid, if the purpose of the tax
fails or the object is lawfully abandoned, the money
which is held in trust to be devoted to the particular
purpose may be recovered back in an action for money
had and received. (Bradford v. City of Chicago, 25
Ill. 349.)"

In Highway Com'rs v. Bloomington, 253 Ill. 164, an
action in assumpsit was brought by the Board of High-
way Commissioners of the town of Bloomington to
recover from the city of Bloomington the amount of
taxes collected upon property in Bloomington town-
ship located within the corporate limits of the city
of Bloomington, which taxes had been paid by the
collectors of revenue to the city under the Road and
Bridge law then in force. Subsequently the Supreme
Court held that the section of the statute under which
the tax was paid was unconstitutional and void. There-
upon suit was brought and the trial court entered judg-
ment for the plaintiff. The Illinois Supreme Court
discusses at great length the right to recover in an
action of assumpsit in a factual situation of this kind.
The court distinguishes express contracts and con-
tracts implied in fact, and points out that there is
still left another class of obligations which can be en-
forced by an action of general assumpsit. Those are
the actions grounded on quasi-contract, and the court
says:

"The action of assumpsit, under the common counts
for money had and received, is an appropriate remedy
to enforce the equitable obligation arising from the
receipt of money by one person which belongs to an-
other and which in equity and justice should be re-
turned. (Gaines v. Miller, 111 U. S. 395; Pauly v.

26

Pauly, 107 Cal. 8; Brown v. Woodward, 75 Conn. 254; Wilson v. Turner, 164 Ill. 398.) The action is in form *ex contractu,* but the alleged contract being purely fictitious, the right to recover does not depend upon any principles of privity of contract between the plaintiff and the defendant and no privity is necessary. (2 Page on Contracts, sec. 789, and cases there cited.) The right to recover is governed by principles of equity although the action is at law. The action is maintainable in all cases where one person has received money or its equivalent under such circumstances that in equity and good conscience he ought not to retain it and which *ex aequo et bono* belongs to another. (Jackson v. Hough, 38 W. Va. 236; Merchants' Bank v. Barnes, 47 L. R. A. 737.)"

Here the money which the state had returned to the defendant was money which the defendant had collected from its customers as a tax. The tax having been passed on to the customers, the defendant had not depleted any of its own funds in the payment of the tax to the state; consequently when the money was returned to defendant it was money which did not belong to the defendant, but in equity and good conscience belonged to the customers who had paid it. It falls squarely within the rule laid down in Wayne County Produce Co. v. Duffy-Mott Co., 244 N. Y. 351, 155 N. E. 669, in which case the plaintiff bought from the defendant certain quantities of sweet cider at a stated price per gallon plus the manufacturer's war tax of 10 per cent. While the contract was in existence the plaintiff paid some $2,500 for the tax which the defendant paid over to the Federal government. The Federal courts held that such sales were not subject to a tax and the defendant obtained a refund from the government of the taxes which had been unlawfully collected from it. The court states the question before it is whether the money thus refunded is held

27

by the defendant for its own use or for the use of the plaintiff. The court says:

"We think the plaintiff must prevail. This is not a case where the item of the tax is absorbed in a total or composite price to be paid at all events. In such a case the buyer is without remedy, though the annulment of the tax may increase the profit to the seller . . . . This is a case where the promise of the buyer is to pay a stated price, and to put the seller in funds for the payment of a tax besides. In such a case the failure of the tax reduces to an equivalent extent the obligation of the promise. The form of the transaction was not thoughtless or accidental. It was deliberate and purposed. The end to be served is conceded in the briefs of counsel. If a sum equal to 10 per cent of the quoted price per gallon had been added to the price as something to be paid at all events, a tax would have been due upon the sum so added as well as upon the residue. A form was adopted whereby the manufacturer was in a position to account to the government at the quoted rate per gallon, and to pay the tax with the excess. The defendant had the benefit of the transaction as thus moulded in its dealings with the government. It is now attempting to set upon the transaction the impress of another quality in its dealings with the plaintiff. . . .

"The contract therefore, in effect, was this and nothing more, that whatever moneys were necessary for the payment of a tax would be furnished by the buyer."

As to the money collected subsequent to the decision in Oscar L. Paris Co. v. Lyons, supra, it was money which the defendant in its bills designated and earmarked as a tax which it knew it was not required to pay and which was, as far as the defendant was concerned, nonexistent. There is no reason to distinguish the money thus collected from the tax money refunded to the defendant by the state. Applying the reasoning

28

in Gannaway v. Barricklow, supra, the money in the hands of the defendant belonged to the plaintiff and other customers who had paid it under like conditions. All of it constituted money which did not belong to the defendant and which in equity and good conscience belonged to the customers who had paid it as a tax. In each case the money was paid separately, was not included in a composite price, and the amounts paid were specifically designated on the bills as a tax. This fact brings it clearly within the distinction made in Wayne County Produce Co. v. Duffy-Mott Co., supra, and many other cases of like character.

██ A person who has been unjustly enriched at the expense of another is required to make restitution to the other. Restatement of the Law of Restitution, sec. 1. The plaintiff clearly had a right to recover from defendant in an action at law the money which was called a tax and paid by plaintiff. Highway Com'rs v. Bloomington, supra. Where a person holding title to property is subject to an equitable duty to convey it to another on the ground that he would be unjustly enriched if he were permitted to retain it, a constructive trust arises. Restatement of the Law of Restitution, sec. 160. "A constructive trust is the formula through which the conscience of equity finds expression. When property has been acquired in such circumstances that the holder of the legal title may not in good conscience retain the beneficial interest, equity converts him into a trustee. . . . A court of equity in decreeing a constructive trust is bound by no unyielding formula. The equity of the transaction must shape the measure of relief." Beatty v. Guggenheim Exploration Co., 122 N. E. 378 (N. Y., opinion by Judge Cardozo), cited in 3 Bogert's Trusts and Trustees, sec. 471.

In Board of Trustees v. Village of Glen Ellyn, 337 Ill. App. 183, at p. 194, the court says:

29

"It is an elemental principle of law, applied in both law and equity courts, that where one person has received money or its equivalent, which belongs to another, under such circumstances that in equity and good conscience he ought not to retain it, recovery will be allowed. . . . [Citing cases.]

"In equity, the theory of recovery is predicated on the imposition of a constructive trust . . . [citing cases] and at law, on the basis of a quasi-contract, or contract implied in law. . . . [Citing cases.]"

In Peter v. Peter, 343 Ill. 493, the court says:

"The important question in cases of this character is not whether the particular mistake was one of law or of fact but whether it was such as a court of equity will correct. . . . [Citing cases.] Pomeroy, in his Equity Jurisprudence, (vol. 2, 3d ed. sec. 849), formulates a general rule based upon justice and principle and supported by numerous decisions, which simply defines the extent of equity jurisprudence to relieve in cases of mistake. It is as follows: 'Wherever a person is ignorant or mistaken with respect to his own antecedent and existing private legal rights, interests, estates, duties, liabilities or other relation, either of property or contract or personal status, and enters into some transaction the legal scope and operation of which he correctly apprehends and understands, for the purpose of affecting such assumed rights, interests or relations or of carrying out such assumed duties or liabilities, equity will grant its relief, defensive or affirmative, treating the mistake as analogous to, if not identical with, a mistake of fact.' This rule finds support in our own decisions. (Moore v. Shook, supra, [276 Ill. 47] and cases cited.)"

The defendant contends that the case of Wayne County Produce Co. v. Duffy-Mott Co., supra, is not the law in Illinois, and in support of that contention cites Noll Co. v. Sparks Milling Co., 304 Ill. App. 624, in which case the plaintiff unsuccessfully sought to

30

recover certain processing taxes collected from the plaintiff by the defendant during the period when the Agricultural Adjustment Act was in effect. This Act had been declared unconstitutional by the Supreme Court of the United States, and the money paid by the defendant as taxes was refunded to it. A contract had been entered into between the plaintiff and the defendant providing for a price revision if the tax was changed, but made no provision for a revision if the tax was invalid. The court says: "Counsel rely largely upon the decision of the New York court of appeals in Wayne County Produce Co. v. Duffy-Mott Co., Inc., 244 N. Y. 351, 155 N. E. 669. We think that case is distinguishable, however, from the instant case. In that case there was no written contract and the amount paid as tax and held to be recoverable was not included in the sale price of the product, but was in addition thereto and billed as a separate item." In further support of its decision, the court says: "The facts in the instant case are very similar to those in the case of Johnson v. Igleheart Bros., Inc., 95 F.2d 4. There, too, suits were brought to recover back processing taxes, that were included in the price of flour sold, no mention being made of the amount of processing tax included in the purchase price." The opinion cites with approval G. S. Johnson Co. v. N. Sauer Milling Co., 148 Kan. 861, 84 P.2d 934, where the fact that there was a detailed contract and the tax was absorbed in the whole or composite price was considered to be of controlling importance. A similar result was reached in Crerar Clinch Coal Co. v. Board of Education, 13 Ill.App.2d 208, where the court points out that the authorities hold that where a contract provides a specific price for the articles sold, the purchaser cannot claim a reduction in the price because of the elimination or reduction of a tax, such tax being absorbed or buried in the contract price, and it cites Noll Baking & Ice Cream Co. v. Sparks Milling Co.,

supra, in distinguishing the Wayne County Produce Co. v. Duffy-Mott Co. case from the case before it. The court holds that the plaintiff there could recover from the defendant the amount of the tax deducted by defendant from the contract price, based upon the fact that the contract fixed a composite price rather than a separate undertaking to pay the tax in addition to the price named. These cases tend to support the position of the plaintiff here.

There is no rule of equity or law which would permit the defendant to collect money for a special purpose for which it never can or will be used and to retain the money for its own enrichment over the rights of the plaintiff or plaintiffs who had paid it.

The defendant also argues that the plaintiff should not be allowed to recover because there is no showing that the payment was made under duress or compulsion and in support of that contention cites Illinois Glass Co. v. Chicago Tel. Co., 234 Ill. 535. In that case the plaintiff entered into a contract with the defendant for telephone service at an agreed rate which was in excess of the rates fixed by ordinance. Suit was brought to recover from the defendant the money paid in excess of the rates fixed by the ordinance. The court reasoned that in order to recover the overpayment the plaintiff assumed the burden of establishing facts from which the law would draw the conclusion that the defendant had received money which in justice belonged to the plaintiff and ought to be returned, and found that the only ground relied on by the plaintiff was that it had made a payment in excess of the rate for telephone service fixed by the ordinance and that what the plaintiff was trying to recover was an overpayment made by virtue of the contract. The court discussed the rules governing compulsory payment and concluded that the rule which prohibits a recovery from a governmental taxing agency of a legal tax voluntarily paid was applicable and that no recovery

32

could be had. In that case, however, it should be noted that the payment was made under a contract for the payment of a certain sum and the court found that the plaintiff at the time when it entered into the contract had full knowledge of the ordinance and the price therein fixed. It is much different from the case before us, where the money in the hands of the defendant belongs to the customers who had paid it, which is true both as to those who before the decision in Oscar L. Paris Co. v. Lyons, supra, made the payments specifically as a tax knowing nothing of the challenge to the validity of the tax or that the defendant had no right to so charge it, and to those who after the decision paid the money to the defendant under its representation, untrue in fact, that they were paying a tax, which the defendant knew was not applicable to it. This is not a case where the plaintiff and others similarly situated are trying to recover an overpayment made by virtue of a contract. Money paid under mistakes of this character furnishes ground for relief in equity. Peter v. Peter, supra.

■ The other question is as to whether the plaintiff in his complaint has set up the necessary elements to bring a class suit.

In Smyth v. Kaspar American State Bank, 9 Ill.2d 27, at p. 44, the court says with regard to class suits:

". . . Although refinements and distinctions have been promulgated by the courts on the subject of class actions (45 Harv. L. Rev. 1297; Dickinson v. Burnham, 197 F.2d 973; Southeast National Bank v. Board of Education, 298 Ill. App. 92,) the basic criterion is the community of interest in the subject matter and remedy.

"In analyzing the basis of class suits, the U. S. Court of Appeals stated in Weeks v. Bareco Oil Co., 125 F.2d 84: 'To permit the defendants to contest liability with each claimant in a single separate suit would, in many cases, give defendants an advantage which would be

33

almost equivalent to closing the door of justice to all claimants. This is what we think the class suit practice was to prevent.' "

In Flanagan v. City of Chicago, 311 Ill. App. 135, the court said (p. 158):

". . . An entire absence of a remedy at law is not necessary but the inadequacy and impracticability of the remedy is equally effective to furnish a ground for equity jurisdiction. (Ely v. King-Richardson Co., 265 Ill. 148; People v. Small, 319 id. 437.) The jurisdiction of equity for the enforcement of trusts is another ground of its jurisdiction in this case. The enforcement of trusts is peculiarly within the province of a court of equity, and a case which has for its object the enforcement of a trust is a case in equity. Equitable jurisdiction is not taken away by the fact that the complainant has a remedy at law. (Howell v. Moores, 127 Ill. 67; People v. Bordeaux, 242 id. 327.)"

In the instant case the same questions of law and fact are involved. The only issue presented to the court is, did the various customers of the defendant pay to it a sum of money separately listed as a tax upon the bills which had been rendered to them and which defendant is now seeking to retain although the tax had been wrongfully collected? This is the sole issue which would be before the court whether the payment was made by the customers before or after the decision in Oscar L. Paris Co. v. Lyons, supra.

In Kimbrough v. Parker, 344 Ill. App. 483, this court held that five contestants in a puzzle contest conducted under defendants' auspices could maintain as a class action a suit against defendants for the imposition of a trust upon the proceeds of the contest, holding where the facts were that 3,300 persons had sent in money for a contest and the defendants had not intended to pay prizes and the whole purpose was to enrich the defendants, and where these contributions constituted a common fund, and were of small amounts, the in-

34

ducements being substantially the same for all, and the issues between each contestant and the defendants were the same and there were no actual or potential conflicts of interest, that consequently recourse to a court of equity was proper. Van Kleeck v. Vente, 340 Ill. App. 395.

The defendant relies on Peoples Store of Roseland v. McKibbin, 379 Ill. 148, where a suit was brought to enjoin the collection of a retailers' occupation tax and to obtain an accounting for taxes previously paid and the issuance of a credit certificate thereon. The sales for which the tax had been collected pertained to the sale of foodstuffs to hospitals and other similar institutions. The complaint was predicated on the theory that it was a class action brought on behalf of all individuals and firms engaged in similar business. The court held that in order to recover the plaintiffs must place themselves squarely under the section of the statute providing for claim for credit or refund for taxes improperly paid under the Retailers' Occupation Tax Act, and that while all retailers of the state engaged in selling food supplies to institutions of the kind and character to which plaintiffs sold have a common interest in having such sales exempted from the tax, their common interest stops there. The court stated that a decision sustaining the retailers' view that no tax was due on such sales would not create any fund from which reimbursement can be made, nor would it establish the existence of a right of recovery in every vendor. Each must make proof as required by the statute, and in so doing he must rely on his own sales alone. This decision cannot be applied to the case before us. The factual situation in the case before us is entirely different and the cited decision is not in point. We have carefully examined the other cases cited by the defendant and find that they are not controlling on the issues before us.

The order of the Circuit Court of Cook county is reversed and the cause is remanded to take further proceedings in accordance with this opinion.

Reversed and remanded.

SCHWARTZ, P. J. and ROBSON, J., concur.