MIDWAY TOBACCO CO. *et al.*, Individually and as Representatives of a Class, Plaintiffs-Appellees, *v.* GEORGE E. MAHIN *et al.*, Defendants-Appellees.—(S. BLOOM, INC., *et al.*, Respondents-Appellants.)

First District (1st Division)   No. 61305

Opinion filed September 7, 1976.—Supplemental opinion filed upon denial of rehearing November 1, 1976.

Maurice P. Raizes, Sam Schachtman, Howard R. Slater, Edward R. Gorenstein, Douglas Donenfeld, and Sam Shkolnik, all of Chicago, Hudson Sours, of Peoria, and Lyle Brown, of Elgin, for appellants.

William J. Scott, Attorney General, of Chicago (Paul J. Bargiel and Stephen R. Swofford, Assistant Attorneys General, of counsel), for appellees George E. Mahin *et al.*

Mr. JUSTICE SIMON delivered the opinion of the court:

This appeal results from a holding by the circuit court in 1969 that the Illinois Tobacco Products Tax Act, referred to herein as "the Act" (Ill. Rev. Stat. 1969, ch. 120, pars. 453.81 to 453.91), was unconstitutional. During that proceeding the court ordered a protest fund created into which tobacco distributors (who are the respondents herein) and others who were attacking the Act were directed to deposit taxes they had collected pursuant to the Act. The issues raised by this appeal revolve around the jurisdiction of the circuit court to compel remittance into that protest fund of the taxes collected by the respondents. The circuit court ruled that it had jurisdiction to enter an order requiring payments into that fund, and this court granted leave to appeal pursuant to Rule 308 of the Illinois Supreme Court Rules (Ill. Rev. Stat. 1975, ch. 110A, par. 308). A statement of the procedural posture of these cases and a companion case since their filing will be helpful in understanding the issues which must be considered in resolving this appeal.

*Bloom v. Mahin* was filed in the circuit court on July 18, 1969, seeking a declaratory judgment that the Act was unconstitutional and an injunction against its enforcement. Shortly thereafter, the class actions entitled *Capitol Cigar Co. v. Mahin* and *Midway Tobacco Co. v. Mahin* were filed; they assailed the constitutionality of the Act and requested the creation of a protest fund to segregate the monies collected pursuant to the Act from the general revenue fund. The class plaintiffs in *Capitol* were defined as "sellers of tobacco products * * * other than distributors" and in *Midway* as "distributors of tobacco products" as defined for purposes of the tax. The circuit court consolidated the *Midway* and *Capitol* cases and they were heard as companion cases with *Bloom*.

On December 17, 1969, the circuit court entered final decrees holding the Act unconstitutional. It found *Midway* and *Capitol* to be proper class actions, that due notice was served upon all parties entitled thereto and that the cause had been diligently prosecuted as a class action. It entered decrees in *Midway* and *Capitol* permanently enjoining the defendants, including the Director of Revenue, from enforcing the tax. In the companion case, *Bloom*, the court declared the Act to be unconstitutional, but determined it was unnecessary to issue an injunction because the enforcement of the tax was being enjoined in *Midway*.

The following provisions in the decrees in *Midway* and *Capitol* are pertinent to the issues in this appeal:

> "6. The Defendant, George E. Mahin, as Director of the Department of Revenue of the State of Illinois, is hereby permanently enjoined and restrained from enforcing or administering the Act herein involved, and the Rules of the

Department of Revenue herein involved, and the Rules of the Department of Revenue herein found to be invalid, in any manner except to remit to the Treasurer of the State of Illinois with notice to said Treasurer to hold in the Protest Fund heretofore designated, any and all Tobacco Products tax payments now and heretofore received by him, until further order of this Court.

   ❋ ❋ ❋

8. That each and all of the Defendants and their agents, representatives, employees and successors in office be, and they are permanently enjoined and restrained from demanding or collecting from the Parties-Plaintiff and others similarly situated in Illinois, any taxes under the Tobacco Products Tax Act.

   ❋ ❋ ❋

10. Provided, however, that during the period of time for appeal, or during the pendency of an appeal perfected from this Decree, and until the further order of this Court, Parties-Plaintiff and all other persons similarly situated shall continue to pay the tax on tobacco products, in accordance with the 'Tobacco Products Tax Act', and such payments shall continue to be remitted to the Defendant Director of Revenue to be transmitted by him with notice to Defendant Treasurer of the State of Illinois to hold such payments in the Protest Fund heretofore established; and such payments shall be so held by the State Treasurer.

   ❋ ❋ ❋

12. This Court reserves and retains jurisdiction of this cause for the purpose of hereafter ordering the refund and return by the Defendants of any and all amounts heretofore or hereafter held by them in the Protest Fund as directed by this Court, and for the purposes of determining and supervising the distribution of such amounts, and for fixing and determining attorneys' fees in connection with this proceeding, and for such other purposes which may be equitable, appropriate, or which may be required to effectuate the provisions hereof."

The Department of Revenue issued a bulletin on December 22, 1969, to all distributors licensed under the Act informing them that the Act had been held unconstitutional and quoting paragraphs 8 and 10 (set forth above) of the final decrees. All of the respondents were licensed under the Act; none has stated that it did not receive this notice.

On July 21, 1969, the State through its Director of Revenue filed a petition seeking to compel the respondents to remit to a protest fund all monies collected by them but not paid. On April 16, 1974, the plaintiff consumer class, an intervenor in the original proceedings, filed a petition

adopting the State's petition, and requesting that the taxes collected be paid directly into the protest fund so the court could make further appropriate orders as to its distribution. No summons was served, but each respondent, all of whom were either named as plaintiffs in *Bloom* or designated class members in *Midway*, were sent a copy of this petition and a notice of motion relating thereto. Many of the respondents filed limited appearances to contest the jurisdiction of the court and motions to quash.

On December 23, 1974, the circuit court held that the court had jurisdiction because (i) each respondent was a name plaintiff in *Bloom* or a member of the class certified in *Midway*; (ii) the petitions of the State and intervening consumer class were a continuation of *Midway, Capitol* and *Bloom* in which the court declared the Act unconstitutional and retained jurisdiction to enter such orders relating to the collection of the tax and such other orders as were necessary for a complete determination and disposition of all issues; (iii) a court sitting in equity has continuing jurisdiction to determine all matters relating to a case; and (iv) 17 of the respondents had already filed claims for refund from the court-created protest fund in *Midway* and *Capitol*, thereby submitting themselves to the court's jurisdiction.

It is from this order which the respondents appeal. They argue that the trial court erred in denying their motion to quash and in entering the requested order for the following reasons: First, they were not members of the class certified in *Midway*, the class action was improper because determination of the amount of taxes which each respondent was holding was dependent upon separate and unrelated transactions, and class action principles and due process prevent the court from applying the decision as *res judicata* against them. Second, even if the class action were proper, the circuit court had no personal jurisdiction over the respondents because the *Midway, Capitol* and *Bloom* cases were no longer before the court. Moreover, the order being appealed from was erroneous because it was beyond the scope of the litigation attacking the constitutionality of the Act as well as beyond the scope of the relief permitted in a declaratory judgment action, and, therefore, the court lacked equity jurisdiction. Finally, they argue that the court was attempting to compel the collection of an unconstitutional tax, and it had no jurisdiction to do this.

The description of the class by the complaint in *Midway* as all "distributors of tobacco products in the State of Illinois" as defined by the Act included the respondents now before us. All of the respondents were licensed by the Department of Revenue to distribute tobacco products as required by paragraph 453.84 of the Act, and this brings the respondents

into the class defined by the *Midway* complaint. All respondents collected and remitted the tax as required by the Act until the fall of 1969.

■■ The respondents contend, however, that the class as defined by the following language in the final decrees does not include them and that the extension of jurisdiction over them was, therefore, unwarranted:

> "That this cause has been diligently and properly prosecuted, individually and as a proper class action on behalf of the respective Parties-Plaintiff and others similarly situated, being those taxpayers who were required to pay and *did consequently pay to the Defendants the tax due* under the Tobacco Products Tax Act." (Emphasis added.)

The respondents' position is that the class included only those who paid the tax, and not those who did not pay the tax. This is a simplistic and unrealistic interpretation of the decree. The respondents were required by the Act to pay the tax, and they did pay it until at least September 1969. The trial judge indicated in November 1969 that he would hold the Act unconstitutional, although his written order was not entered until the following month. In apparent reaction to this ruling the respondents immediately stopped remitting the tax to the Department of Revenue, some going so far as to stop payment upon checks already mailed to the Department in payment of the tax. The respondents cannot by their wilful act of refusing to pay the tax after learning the ruling of the court, eliminate themselves from the class and the jurisdiction of the court while accepting the benefits of the court's ruling. The fact that some of the class members did not pay the tax after the Act was held to be unconstitutional does not destroy the class, if all other requirements for class actions are met; neither does it establish a reasonable basis for a separate class. In fact, the payment of the tax by the respondents prior to the initiation of these actions or for a time thereafter, brings them within the definition of the class set forth in the decree.

The next issue is whether class action principles were violated in the formation of the initial class and whether the respondents' right to due process of law was met in all respects. The general rule of law is that personal jurisdiction is necessary to bind any person except for class suits where "some members of the class are parties, [and] may bind members of the class or those represented who were not made parties to it." (*Hansberry v. Lee* (1940), 311 U.S. 32, 41, 85 L. Ed. 22, 26, 61 S. Ct. 115; see also *Newberry Library v. Board of Education* (1944), 387 Ill. 85, 55 N.E.2d 147.) Any group defined as a class must be examined from the standpoint of due process to insure that the rights of its members have been protected and adequately represented before *res judicata* will be applied to the claims of absent members. *Hansberry v. Lee* (1940), 311 U.S. 32, 85 L. Ed. 22, 61 S. Ct. 115; *Gonzales v. Cassidy* (5th Cir. 1974),

474 F.2d 67; *Gaffney v. Shell Oil Co.* (1974), 19 Ill. App. 3d 987, 312 N.E.2d 753.

■■ For a class action suit to bind absent members in Illinois, the number of class members must be so large as to make their joinder impractical and burdensome, all members of the class must have a community of interest in the subject matter and the relief sought, the cause of action must be founded in equity and the named party must adequately represent the interests of the absent class members. (*Hagerty v. General Motors Corp.* (1974), 59 Ill. 2d 52, 319 N.E.2d 5; *Harrison Sheet Steel Co. v. Lyons* (1959), 15 Ill. 2d 532, 155 N.E.2d 595; *Dailey v. Sunset Hills Trust Estate* (1975), 30 Ill. App. 3d 121, 332 N.E.2d 158.) There is no dispute that the number of class members in the instant case was sufficiently large to make joinder impractical. All of the members of the class had a common interest in the subject matter and the relief sought because resolution of the constitutionality of the Act would affect them identically in determining whether they were subject to the discriminatory provisions of the tax. (*Johnson v. Halpin* (1952), 413 Ill. 257, 108 N.E.2d 429; *Dee-El Garage, Inc. v. Korzen* (1972), 53 Ill. 2d 1, 289 N.E.2d 431.) The stated cause of action was equitable, seeking a declaratory judgment and an injunction against an unconstitutional tax. All class members had a common interest in this relief, and in the protest fund established to provide a mechanism for refunds to those who had borne the burden of the tax, including a substantial number of the respondents named in the petition who are already seeking refunds and others who may.

All class members, including respondents, were adequately represented through all the proceedings leading up to the declaration that the tax was unconstitutional, enjoining the collection of the tax and setting up the protest fund. Respondents, however, claim that they were inadequately represented when the court entered the final decree ordering that the tax continue to be paid and remitted to the Director of Revenue for payment over into the protest fund. They argue that though the interests of the class were coextensive with the named parties to that point, the actual amount of the taxes due from each member resulted from separate transactions, and for that reason it was improper for the circuit court to enter an order which permitted the State to force each distributor to pay the taxes it had collected without starting a new suit and obtaining personal jurisdiction over each respondent. This argument goes to the propriety of the initial class certifications and requires a determination as to whether each claim by a class member was based upon an individual transaction or on multiple claims of the same nature for varying amounts. *Magro v. Continental Toyota, Inc.* (1976), 37 Ill. App. 3d 1, 4, 344 N.E.2d 675.

As pointed out in several recent cases, there are are two lines of authority, one holding that where an individual member of a class must make individual proof of this claim there can be no class action, while the other holds that multiple claims for varying amounts can be incorporated into a class, if other requirements for a class action are met. See *Gaffney v. Shell Oil Co.* (1974), 19 Ill. App. 3d 987, 312 N.E.2d 753, and *Rodriguez v. Credit Systems Specialists, Inc.*, (1974), 17 Ill. App. 3d 606, 308 N.E.2d 342, and cases cited therein.

Respondents rely upon three cases in particular, each of which is distinguishable. In *Edelman v. Lee Optical Co.* (1974), 24 Ill. App. 3d 216, 320 N.E.2d 517, the basis for the plaintiff class was fraudulent advertising. Each individual's claim depended upon whether he saw and the extent to which he relied upon the defendant's advertising in contracting to purchase glasses. The same element of individual contracts appears in *Hagerty v. General Motors Corp.* (1974), 59 Ill. 2d 52, 313 N.E.2d 5, and *Peoples Store of Roseland v. McKibbin* (1942), 379 Ill. 148, 39 N.E.2d 995. In *Hagerty*, the defendant entered into a contract with each individual class member to perform automotive work. The recovery to which each individual was entitled was dependent upon the nature of the work to be performed and the determination as to whether the Retailers Occupation Tax Act and companion Use Tax or the Service Occupation Tax Act and companion Use Tax should be applied to any given transaction. This, in turn, required a determination in each case as to whether the particular contract was a sale of auto parts to be installed, or a service contract with the sale of parts only incidental to the work performed. In *McKibbin*, the class plaintiffs sought to enjoin enforcement of the Retailers Occupation Tax against persons selling tangible products to hospitals and like institutions. The constitutionality of the Tax Act was not attacked in general but only as applied to certain sales by the class members. Whether any individual fell into this category would require an examination of all their contracts to determine which were within the protected category. In the case before us, all distributors of cigarettes in Illinois were class members and did pay the tax. Only the amount of tax owed has to be determined; there is no contract between the State and the respondents as taxpayers or between the respondents and their customers to which the court would be required to look to determine each respondent's class status or his liability for the tax.

■■ We are of the opinion that the second line of cases including *Gaffney* and *Rodriguez*, upholding a class action even where the amount of damages varies, is more applicable to the fact situation with which we are presented. Their reasoning that a class action should not be defeated because members of the class may be called upon for individual

accountings of the amount of their claims is persuasive when applied to the facts presented by this appeal.

An argument similar to the one in the instant case was presented by defendants in *Perlman v. First National Bank* (1973), 15 Ill. App. 3d 784, 305 N.E.2d 236. They urged that the class action seeking refund of overcharges on loans would involve thousands of individual claims and result in a mini-trial in each case as to whether the borrower knew of the practice resulting in the overcharge, and if not, how large a refund was due each individual class member. The court held that the class only encompassed those who did not know of the practice, and that the amount to be refunded to each class member involved simple accounting procedures. Following well-established law, the court held that the hypothetical existence of individual issues is not sufficient to defeat a class action suit. As in *Perlman*, any differences in the positions of individual tobacco distributors may be resolved by the application of basic accounting procedures.

Respondents argue that the part of the decision in *Gaffney* which rejected a proposed defendant class is applicable because they are being forced in this action to defend the entire class of those distributors who did not pay the tax although there is no other relationship between the individual respondents. However, the class disapproved in *Gaffney* was a defendant class. In this case, respondents are members of the plaintiff class which attacked the Act and are now responding to a motion after relief was obtained which benefited all members of the class. Were we to adopt respondents' theory that they are now in effect a defendant class, no motion could ever be filed against class plaintiffs because this would place them in the posture of "defending" the class. The only difference between respondents and the other class members is that respondents wilfully stopped paying the tax in violation of a court order, and we see no logical reason for this conduct to convert the respondents on whose behalf the litigation was initiated into a defendant class.

The respondents were adequately represented because the court order of December 23, 1974, from which this appeal is taken, carefully protects them by limiting remittance to that tax which was "collected by Respondents and not remitted into the protest fund," and the proceeds that were "finally determined to be due." The court's order eliminates the hypothetical issues raised by respondents concerning the amount of taxes which were passed on or absorbed by each of them. On remand, the rights of each respondent can be adequately protected by the application of a proper procedure to determine which taxes are due. If, as the respondents suggest, refunds were made to some of their customers or some individual respondents absorbed the tax themselves, the order

appealed from would entitle them to a set-off against the total computed tax.[1]

The tax due which each respondent would be required to pay into the protest fund would be that which was collected but not remitted. The purpose of requiring remittance of the tax collected from respondent's customers is to insure that refunds are given to those persons who bore the burden of the tax, and to prevent unjust enrichment of members of the distributor class at the expense of the other plaintiffs in *Midway* and *Capitol.* The order cannot be viewed as prejudicial to the respondents for if they had any expectation of retaining a windfall arising from the declaration that the Act was unconstitutional, it was without legal support. In *Cohon v. Oscar L. Paris Co.* (1958), 17 Ill. App. 2d 21, 149 N.E.2d 472, the court observed:

> "[M]oney in the hands of the defendant [respondents in this case] belonged to the plaintiff and other customers who had paid it * * *.
>
> A person who has been unjustly enriched at the expense of another is required to make restitution to the other." 17 Ill. App. 2d 21, 29.

The court in *Perlman* also dealt with this issue holding (15 Ill. App. 3d 784, 801) that where the defendant was unjustly enriched by charging more than was legally permissible, the liability would create the fund and the amount wrongfully taken would constitute the fund. Because those who actually bore the burden of the tax are entitled to the refund (see *Fiorito v. Jones* (1968), 39 Ill. 2d 531, 236 N.E.2d 698), the only way to prevent unjust enrichment of one who collected the tax, but did not refund or remit it, is to order those amounts to be paid into the protest fund administered under the direction of the court.

■■ The respondents further argue that they had neither notice nor reason to believe that the court after declaring the Act unconstitutional would retain jurisdiction to compel them to remit the tax. They, therefore, contend that to apply the decision in *Midway* against them as *res judicata* denies them due process. Illinois does not require mandatory notice to identifiable class members before a class can be certified. The argument that respondents could not anticipate the arrangement the circuit court established is untenable because it is not unusual for a court which is asked to declare a tax unconstitutional and enjoin its enforcement to require payment of the tax into a protest fund during trial proceedings

---

[1] The argument of the respondents that the State has not established that the money was collected from others rather than absorbed by respondents is inappropriate at this time. The respondents filed special limited appearances to contest the jurisdiction of the court and have appealed the order against them pursuant to Supreme Court Rule 308. No proof questions are presented by this appeal.

and pending appeal to be distributed as equity requires upon the litigation's conclusion. (*Dee-El Garage, Inc. v. Korzen* (1972), 53 Ill. 2d 1, 289 N.E.2d 431; *Fiorito v. Jones* (1968), 39 Ill. 2d 531, 236 N.E.2d 698.) Moreover, the respondents were given actual notice of their continuing duty to remit the tax by the bulletin referred to above, which was disseminated to them by the State Director of Revenue. The bulletin stressed that until further order of the court tobacco distributors were required to continue payment of the tax for transmittal to the protest fund. All the respondents must have realized that the decision was applicable to them, but while accepting the benefit of the ruling of unconstitutionality, they ignored the portion of the order requiring continued payment of the tax. Although the opportunity was available, none of the respondents chose after receiving the bulletin to protest the continuing payment requirement or its applicability to them.

If the respondents were as diligent in their efforts to stop collecting the tax from their own customers and to refund any taxes already collected as they were in discontinuing remittance of the tax monies to the State, there would be little or no money which they will be required to remit to the protest fund under the set-off procedure described above. Since their rights were adequately protected in the original class action and will be protected below in the proceeding to determine the proper amount of tax which must be remitted, they have suffered no violation of due process.

■■ Respondents' second argument is that the circuit court had no continuing personal jurisdiction of the parties and the subject matter, and, therefore, no authority to require remittance of any taxes. Where equity has assumed and has jurisdiction for the purpose of granting equitable relief, the court may determine all the issues of the case, whether legal or equitable. (*McLeod v. Lambdin* (1961), 22 Ill. 2d 232, 174 N.E.2d 869.) In order to avoid multiple litigation and to do full and complete justice, a court acting in equity should enter a decree adjudicating all matters in controversy. (*Mensik v. Smith* (1960), 18 Ill. 2d 572, 166 N.E.2d 265.) After a court obtains jurisdiction in equity or pursuant to the Declaratory Judgment Act, it retains jurisdiction for the purpose of providing all relief necessary to lay the controversy to rest. In examining the final decree of the court in *Midway* and *Capitol*, several provisions indicate the court's intention to retain jurisdiction so as to completely resolve the issues involved. Paragraph 10 of the decrees (quoted above) provides that during the pendency of the appeal and until further order of the court, the parties-plaintiffs and all other similarly situated shall continue to pay the tax and such payments are to be remitted to the Director of Revenue to be transmitted by him to the protest fund. Paragraph 12 (also quoted) specifically states that the court "reserves and retains jurisdiction * * * for the purpose of hereafter ordering the refund and return * * * of any

and all amounts heretofore or hereafter held * * * in the Protest Fund * * * and for such other purpose which may be equitable, appropriate or which may be required to effectuate the provisions hereof."

The respondents argue that this language shows only that the court intended to retain jurisdiction over the administration of the protest fund, and that payments into the fund were to be only on a voluntary basis. As we read the decree, it demonstrates the court's intention to do full and final justice. It does not make sense to interpret the decrees as establishing a protest fund to which payments could be made on a voluntary basis or as allowing any class member who desired to do so to withdraw from the class and withhold any taxes owing without any sanction. Such an order would defeat the purpose of the class action suit which, as we hold, was properly brought. The logical interpretation of the decree is that the circuit court retained jurisdiction to resolve any future, unforeseen issues which might arise because of its ruling.

We find it unnecessary to decide whether the *Bloom* case was still before the court because the circuit court retained jurisdiction of the cause in *Midway* and *Capitol* in which all respondents were class members. Since the petition which prayed entry of the order appealed from was a continuation of those cases, there was no requirement for personal service upon each respondent. The notice of motion and a copy of the petition which were mailed to each respondent was sufficient.

The respondents also argue that the court had no jurisdiction of the petition because the original actions were for declaratory judgment and injunctive relief, whereas the petition seeks collection of taxes from the respondents as individuals. This argument is not persuasive because the trial court specifically ordered the parties-plaintiff to continue remitting their tax payments to the Director of Revenue and retained jurisdiction of the cases to enforce the provisions of the decree. This included administration of the protest fund to which payments were mandatory.

*Midway* and *Capitol* were suits for declaratory judgment filed pursuant to section 57.1(3) of the Civil Practice Act (Ill. Rev. Stat. 1973, ch. 110, par. 57.1(3)) which also provides that a petition may be made to any court having jurisdiction for further relief which may become necessary after the declaration has been made. The petition to require remittance of the tax collected clearly falls within the scope of this provision. The statutory provision for further relief is not limited to relief previously requested but permits relief among the parties which is "based upon a declaration of right," and can include coercive relief such as the entry of a money judgment. (*Burgard v. Mascoutah Lumber Co.* (1955), 6 Ill. App. 2d 210, 127 N.E.2d 464. See also *Country Mutual Insurance Co. v. Murray* (1968), 97 Ill. App. 2d 61, 239 N.E.2d 498.) Where the trial court intends payments to a protest fund to be mandatory, and so orders, it is

empowered to enforce this order under the "further relief" provision of the declaratory judgment procedure.

■■ We, therefore, hold that the circuit court had the power inherent in a court of equity to retain jurisdiction to enter any necessary orders to effectuate its ruling as set forth in the final decrees. Under the declaratory judgment procedure, the court also had power to grant "further relief" based upon the declaration of rights in *Midway* and *Capitol*.

The respondents' third and final contention is that the court's order was one "to compel collection of an unconstitutional tax," and such an order was improper. The respondents argue that a tax that has been determined to be unconstitutional is deemed to be void and of no effect, as if the tax had never been enacted, citing *Norton v. Shelby County* (1886), 118 U.S. 425, 30 L. Ed. 178. However, the viewpoint urged upon this court by respondents is not constitutionally mandated. In *Chicot County Drainage District v. Baxter State Bank* (1940), 308 U.S. 371, 84 L. Ed. 329, 60 S. Ct. 317, the Supreme Court disapproved the blanket statement in *Norton*, stating:

> "The courts below have proceeded on the theory that the Act of Congress having been found to be unconstitutional, was not a law; that it was inoperative, conferring no rights and imposing no duties, and hence affording no basis for the challenged decree. [Citations.] It is quite clear, however, that such broad statements as to the effect of a determination of unconstitutionality must be taken with qualifications. The actual existence of a statute, prior to such a determination, is an operative fact and may have consequences which cannot justly be ignored. The past cannot always be erased by a new judicial declaration. The effect of the subsequent ruling as to invalidity may have to be considered in various aspects * * * ." 308 U.S. 371, 374, 84 L. Ed. 329, 332-33.

The Supreme Court in *Chevron Oil Co. v. Huson* (1971), 404 U.S. 97, 30 L. Ed. 2d 296, 92 S. Ct. 349, held that a court decision would not be applied retroactively where to do so would produce substantial inequitable results.

Nor, does the law of Illinois require application of an absolute rule of retroactivity in all cases without regard to the circumstances. In *Consolidated Distilled Products, Inc. v. Mahin* (1973), 56 Ill. 2d 110, 306 N.E.2d 465, in a situation analogous to this one, the Supreme Court held that the policy against unjust enrichment required that money collected pursuant to a tax subsequently found to be illegal should be refunded to those who bore the burden of that tax. In *Reich v. Board of Fire & Police Commissioners* (1973), 13 Ill. App. 3d 1031, 301 N.E.2d 501, the court refused to apply a holding that a criminal statute was unconstitutional retroactively because to do so would disrupt law enforcement. The cases

relied upon by respondents to support their theory that an unconstitutional law is void *ab initio*[2] are ones where an application of the strict retroactivity theory did not have substantial inequitable results. The respondents' reliance upon *Mills v. Peoples Gas Light & Coke Co.* (1927), 327 Ill. 508, 158 N.E. 814, is also misplaced and misleading. In *Mills*, the city attempted to fix gas prices by an ordinance setting lower rates than those charged by the utility company. The ordinance was held unconstitutional, thus validating the higher rates charged by the utility. The plaintiff there was not entitled to any refund based upon rates which violated the ordinance. The case is clearly inapplicable to the fact situation presented by this appeal where to hold the tax void *ab initio* would result in unjust enrichment to the respondents.

The only way to do full justice in the situation where taxes have been collected under a statute subsequently held to be unconstitutional is to enter orders that will reinstate the interested parties to the position they were in before the tax was collected. This is a more appropriate and equitable result than permitting one party to receive a windfall at the expense of others. There are cases where a theory of absolute retroactivity would be appropriate but such a rule should only be applied where equitable; this is not such a case.

■■ Furthermore, the respondents' insistence that the State is attempting to make them pay an unconstitutional tax is unconvincing. The order stating that they are to remit taxes already collected from their customers is far different than an order forcing them to "pay a tax previously declared unconstitutional." As the State points out, it is not trying to collect unpaid taxes because the court's order requires remittance directly into the court-administered protest fund. We, therefore, hold that the declaration that the Act was unconstitutional did not remove jurisdiction from the circuit court to order that any taxes finally determined to have been collected but not paid were to be remitted to the protest fund for proper distribution.

For the reasons stated in this opinion, the order appealed from is affirmed and this cause is remanded for further proceedings not inconsistent with this opinion.

Order affirmed and cause remanded.

GOLDBERG, P. J., and O'CONNOR, J., concur.

---

[2] *Chicago, Wilmington & Vermilion Coal Co. v. People* (1905), 214 Ill. 421, 73 N.E. 770; *City of Ottawa v. Hulse* (1928), 332 Ill. 286, 163 N.E. 685; *People v. Schraeberg* (1932), 347 Ill. 392, 179 N.E. 829; *People ex rel. Barrett v. Sbarbaro* (1944), 386 Ill. 581, 54 N.E.2d 559.

SUPPLEMENTAL OPINION UPON DENIAL OF REHEARING

Mr. JUSTICE SIMON delivered the opinion of the court:

Respondents have filed a petition for rehearing contending that this court erred in referring to the bulletin the Department of Revenue issued on December 22, 1969. They observe that the bulletin in question was first brought to this court's attention during oral argument in this appeal, that it was not introduced in the circuit court and was not part of the record filed with this court and that the respondents neither had the opportunity nor were called upon to admit or deny their receipt of the bulletin.

■■ It is proper for this court to take judicial notice of the bulletin. (*People ex rel. Newdelman v. Weaver* (1972), 50 Ill. 2d 237, 241, 278 N.E.2d 81.) The propriety of taking judicial notice of the bulletin is strengthened by respondents' failure to deny either in oral argument or in their petition for rehearing that the bulletin was promulgated.

The bulletin was addressed "To: All Licensed Distributors Under the Tobacco Products Tax Act," and all of the respondents are licensed tobacco distributors. But, even if the respondents or some of them denied receiving the bulletin, the result arrived at by this court would not be different. As was noted in this court's opinion, Illinois law does not require notice to identifiable class members before a class can be certified. Even if each respondent was not specifically notified of the circuit court's order requiring payment into a protest fund of taxes which had been collected, an arrangment for such payment was a predictable and logical continuation of the class action in which respondents' interests were adequately protected. As the court's opinion points out, it was not an unusual order, but rather one which respondents could reasonably have anticipated after receiving the benefit of the court's ruling.

The remaining points in the petition for rehearing constitute reargument of the case. See Supreme Court Rule 367(b).

Accordingly, the petition for rehearing is denied.

The petition for rehearing is denied.

GOLDBERG, P. J., and O'CONNOR, J., concur.