(No. 33761.—

EMMA SMYTH, *et al.*, Appellees, *vs.* KASPAR AMERICAN STATE BANK, Appellant.

*Opinion filed May 23, 1956—Rehearing denied September 24, 1956.*

28

ALBERT E. JENNER, JR., PHILIP W. TONE, and WIL-
LIAM B. DAVENPORT, all of Chicago, (JOHNSTON, THOMP-
SON, RAYMOND & MAYER, of counsel,) for appellant.

HADDAD & SANTUCCI, and CHARLES T. KROPIK, both of
Chicago, (GEORGE J. HADDAD, of counsel,) for appelles.

Mr. JUSTICE BRISTOW delivered the opinion of the court:

In a class action, instituted by present and former own-
ers of certificates of beneficial interest, issued by defendant
Kaspar American State Bank pursuant to a plan of re-
organization, to enjoin defendant from paying any divi-
dends on its capital stock until the certificates have been
paid, and for other equitable relief, the superior court of
Cook County dismissed the major portion of plaintiffs'
complaint for want of equity, and entered a decree for
defendant on the pleadings. That decree was reversed by
the Appellate Court, which held that the complaint pre-
sented grounds for relief; that the plaintiffs who sur-
rendered their certificates were not barred by an accord and
satisfaction; and that a class suit could be maintained.
(6 Ill. App.2d 64.) We have allowed defendant's petition
for leave to appeal therefrom.

The cause presents for our determination essentially
three issues: the validity of certificates of beneficial in-
terest which are payable, in part, out of future earnings;
whether the surrender of the certificates by some of the
plaintiffs, pursuant to the demand and representations of
the defendant bank, constituted an accord and satisfaction;
and the propriety of a class action herein.

On June 24, 1932, the Auditor of Public Accounts took
over the affairs of the defendant bank after it was com-
pelled to close as a result of a "run" by its depositors.
Pursuant to the statute (Ill. Rev. Stat. 1955, chap. 16½,
par. 11,) he appointed a receiver and filed dissolution pro-
ceedings. An order was entered therein on December 27,

1934, finding that under the plan of reorganization approved by the Auditor the bank was solvent, and directing the receiver to restore the bank to its directors for re-opening.

Under the reorganization plan evolved by the Auditor and officers and directors of the bank, the $1,600,000 capital stock was surrendered and cancelled, and 12,500 shares of new stock were sold at $24 each. Of these new shares, 8,406 were subscribed by the surrendering stockholders, and the remaining 4,094 shares were purchased by 450 new stockholders. The proceeds from this transaction, $300,000, were delivered to the bank. In addition, some 7,000 depositors executed an agreement waiving 60 per cent of the amount standing to their credit (actually 54 per cent as of June 24, 1932,) for a total of $1,805,000 and received in return certificates of beneficial interest. Inasmuch as the legal effect of the waiver agreement and certificates is controverted herein, the relevant portions thereof are set forth.

The agreement recited that the depositor, "in consideration of the execution of like agreements on the part of other depositors of said bank, does hereby covenant and agree to keep on deposit with said bank, and/or does hereby waive, surrender and release said bank from payment of Sixty (60) per cent of the amount of money standing to (his, her, its) credit on the books of said bank as of April 15th, 1933, whether represented by checking account, savings account, * * * or any other evidence of indebtedness, hereby waiving all right to ask or demand said sum of money, and agreeing to accept in lieu of payment in cash and as evidence of said sum waived, a deferred certificate and/or a certificate of beneficial interest issued by said bank for like amount, payable out of the future recoveries and the net profits of the bank, and before any dividends or returns of any kind or character are payable to the stockholders. The depositor further agrees to pre-

sent all certificates of deposit, savings books and pass books, or other evidence of indebtedness held by the depositor or creditor, to the bank for endorsement in accordance with this agreement on being notified of the acceptance hereof."

The certificate of beneficial interest recited that it was subject to the waiver agreement and that it was payable "solely out of the future recoveries and net profits" of the bank, and that payment shall be made *pro rata* with the sums due on similar certificates on such dates and in such manner as the bank shall determine with the written approval of the Auditor, before any dividends or returns of any kind are paid on the capital stock of the bank.

The certificate specified further: "It is understood and agreed that no lien or preference of any kind exists against any of the assets of the bank in favor of the holder of this certificate and that payments hereon shall be made from time to time in such amount as shall be directed by the Auditor of Public Accounts in his sole discretion."

In connection with these provisions of the certificate it should be noted that the certificate was construed (by this court in August, 1938,) to preclude any recourse against the stockholders under their constitutional liability for the amount of waived deposits. *Chaitlen* v. *Kaspar American State Bank,* 372 Ill. 83.

Under the reorganization plan it was further provided that the slow or frozen assets of a book value of $3,168,493 were written down to $383,780. These assets, carried in a separate account for bookkeeping purposes, were under the charge of a liquidator appointed by the Auditor, and they could be applied to payment of the certificate to the extent they and their proceeds were not necessary to insure the solvency and liquidity of the reorganized bank.

The bank was reopened on January 15, 1935, and between April 14, 1936, and May 13, 1946, some nine distributions were made by the bank from the net proceeds of the slow or frozen assets, upon the authority and ap-

proval of the Auditor, for a total of 55 per cent of the face value of the certificates.

On September 21, 1948, the Auditor notified the bank by letter that it had sufficient accumulations of recoveries and profits in its capital structure to make at least a 15 per cent disbursement to its deferred certificate holders. The letter stated: "It is hereby requested that such a disbursement be made, and we would appreciate your advice as to the date of distribution and total amount to be distributed."

Pursuant thereto, defendant on December 15, 1948, sent a letter to each certificate holder, setting forth in substance the background of the reorganization, the fact that "similar arrangements" had been made by many other banks, including the Fulton State Bank, which declared its last distribution when the set-aside assets were liquidated. The letter then explained that the ensuing litigation against the Fulton Bank resulted in the decision in *Logemeyer* v. *Fulton State Bank,* 384 Ill. 11, which defendant considered binding upon it, and which decided that the certificates were payable solely out of money realized from the liquidation of assets. Consequently, the letter stated, since defendant's own set-aside assets were now liquidated, defendant was required to make a final distribution which amounted to 15 per cent of the original sum waived. However, no check would be delivered without surrender of the certificate, which would be cancelled and kept by the bank.

In response to that letter the holders of 5,874 of the 7,061 certificates originally issued requested and received the final 15 per cent distribution and delivered their certificates, which were stamped "paid" and cancelled. The defendant bank distributed $250,980.75 of this "final payment," and $19,687.58 remained for the payment of the outstanding 1,187 certificates, on which the bank refuses to pay except upon surrender of the certificates.

The plaintiffs in Group I represent the class which did not surrender their certificates, and the plaintiffs in Group II

represent those who did surrender their certificates. They allege that, unless enjoined, defendant will declare and pay dividends to the stockholders, and they seek a decree that all members of both groups have a preferential right to be paid *pro rata* the full face amount of their respective certificates before any dividends or returns are paid to the stockholders; that defendant be required to pay into court, for the members of Group I, the 15 per cent distribution tendered in the letter of December 15, 1948; that the cancellations of certificates surrendered on or after December 15, 1948, be declared void; that defendant be enjoined from paying any dividends on its capital stock until the face amount of the certificates has been paid, and that until final payment defendant be required to pay into court any dividend declared by it, which shall be distributed *pro rata* among the members of Groups I and II.

Defendant's answer pleads that insofar as the deposit waiver agreement and the certificate of beneficial interest purport to be a pledge of future earnings of the bank, or to afford any certificate holder any claim on any assets of any kind of the bank, they are *ultra vires* and against public policy, and therefore void. Defendant also raises the defense of accord and satisfaction as against the plaintiffs in Group II, alleging that the surrender of certificates for cancellation by the holders on receiving the final 15 per cent payment was for good and valuable consideration, and was a discharge of all obligations due on the certificates from defendant. Defendant further challenges the propriety of a class suit in a proceeding where the interests of the parties are conflicting.

The superior court of Cook County dismissed the major portion of plaintiffs' complaint for want of equity, and granted defendant's motion for a decree in its favor on the pleadings. The Appellate Court reversed that decree and held that the certificates were valid obligations, but that plaintiffs in Group II were not entitled to relief since

there was a valid accord and satisfaction, and that they could not maintain a class suit. On rehearing, however, the Appellate Court, in an additional opinion, held that the accord and satisfaction was vitiated by a mistake of law, and that plaintiffs in Group II as well as Group I could properly prosecute a class suit.

With reference to the validity of the certificates, we are cognizant that they were subject to judicial observation by both the court which authorized the bank to resume operations under the reorganization plan, and by this court in *Chaitlen* v. *Kaspar American State Bank,* 372 Ill. 83, where we noted that the waiving depositors "were to be paid out of certain slow assets which were to be placed in a liquidation fund and out of future profits of the bank." However, since the validity of that provision was not questioned, it must now be determined by this court.

Defendant argues that insofar as they are payable out of future earnings the certificates are *ultra vires* and therefore void. It is settled doctrine, as defendant contends, that no rights arise under an *ultra vires* contract, even though it has been performed, and that conclusion cannot be circumvented by invoking an estoppel or any other legal concept. *Texas & Pacific Railway Co.* v. *Pottorff,* 291 U.S. 245; *O'Connell* v. *Chicago Park District,* 376 Ill. 550.

In support of its contention that the certificates were *ultra vires,* defendant maintains, and plaintiffs deny, that the case of *Logemeyer* v. *Fulton State Bank* adjudicated that issue and is binding herein. Although the *ratio decidendi* of that case was that the power of attorney executed by the depositors constituted the sole ground of liability of the bank and that under it the bank had not contracted to repay the waived deposits out of future earnings, nevertheless, the court in the course of its opinion stated that a going bank has no power to pledge future earnings to secure creditors or depositors, and intimated that it would have been unlawful had the Auditor suggested that the

waiving depositors be paid out of future earnings. It is that additional observation which defendant claims is determinative of the case at bar.

It would not be a proper exercise of the judicial function either to categorically label the statements as nonbinding *dicta* as plaintiffs suggest, or to regard them as declarative of the law irrespective of their context, as defendant urges. The statements should properly be evaluated in the light of the cause involved, and the authorities cited.

Under the reorganization of the Fulton State Bank, which had been closed by the Auditor, the depositors signed powers of attorney authorizing the waiver of 40 per cent of their deposits and delegated to the bank authority to adopt any plan of reorganization that it would deem best for conserving the interests of the depositors and the assets of the bank.

Some four years after the bank resumed operations, the Auditor sent the bank a resume of its operations showing total earnings, profits, recoveries and potential recoveries from the segregated assets during the four-year period "with a view toward arriving at a figure that would represent a fair settlement" with the waiving depositors. Several months later the officers of the bank, pursuant to authority from the stockholders, offered to pay approximately 55 per cent of the deposits waived in full settlement of the liability to the depositors, but the offer was rejected and the depositors brought an action at law to recover the full amount of the waived deposits. They claimed that there was either a constructive trust or an implied agreement to pay the waived deposits from profits, evident from the fact that the Auditor included net earnings with the recoveries from the charged-off assets in his letter to the bank, and from the stockholders' resolution which also included net earnings of the bank in the calculations, and from a letter that had been sent by a Citizens Committee to nonresident depositors at the time of the reorganization.

However, the Auditor and the Chief Bank Examiner testified that no plan was approved which involved a payment of any of the liabilities of the bank out of future profits, nor was any testimony offered to prove such action upon the part of the Auditor.

The court refused to imply an agreement from the circumstances suggested by plaintiffs, which were otherwise explainable, and found no evidence that the bank or Auditor authorized that the general assets of the reorganized bank were to be pledged to pay the waived deposits. The court also rejected plaintiffs' alternative and inconsistent contention that a constructive trust should be imposed on all the assets in favor of the waiving depositors. In the course of its analysis the court intimated, as aforementioned, that it would not be within the power of a reorganized bank to enter into an agreement to promise to pay waiving depositors from future earnings.

A review of the cases cited by the court in the *Logemeyer case* shows that they do not involve that issue, nor support any such declaration of the law. In *People ex rel. Nelson* v. *Wiersema State Bank,* 361 Ill. 75, the court held *ultra vires* and void a pledge of specific assets by a solvent bank to secure a deposit of a park district on the ground that banks have no general power to pledge specific assets and that such power is in fact contrary to public policy in that creditors or other depositors would be prejudiced. The decision followed that of the Supreme Court of the United States in *Marion* v. *Sneeden,* 291 U.S. 262, and is similar to that in *O'Connell* v. *Chicago Park District,* 376 Ill. 550.

In *Knass* v. *Madison and Kedzie State Bank,* 354 Ill. 554, also cited in the *Logemeyer case,* the court held *ultra vires* an agreement by the bank to repurchase real estate bonds on the ground that it created liability of an uncertain amount, contingent upon factors beyond its control; and in *Continental Illinois National Bank and Trust Co.* v. *Peo-*

*ples Trust and Savings Bank,* 366 Ill. 366, an agreement whereby one bank agreed to liquidate the assets and discharge the debts of another, without the statutory permission of the Auditor, was deemed *ultra vires.*

The common denominator in each of those cited cases was the impairment of capital, and insofar as the particular agreement involved a pledge of specific assets to assure preferential treatment of certain depositors at the expense of others, those cases are distinguishable from the *Logemeyer case.* Nevertheless, the court therein reasoned that since the alleged implied agreement to pay out of future earnings would involve a pledge of general assets, by analogy to those cases, it would be *ultra vires.* Irrespective of the propriety of that analogy, it is evident that under the implied agreement therein, the deposits would have been merely changed from a demand liability to a postponed liability, thereby impairing the capital of the Fulton State Bank.

In contrast to that case, the certificate herein protects the capital by prohibiting the bank from using its capital funds to retire the certificates, and expressly negates any pledge of assets, such as that construed by the court in the *Logemeyer case,* by the provision: "It is understood and agreed that no lien or preference of any kind exists against the assets of the bank in favor of the holder of this certificate * * *." Moreover, the certificate further protects new depositors and creditors by the provision prohibiting the distribution of earnings to pay off the certificates without the consent of the Auditor. Thus, the certificate holders in the case at bar, unlike the waiving depositors in the *Longemeyer case,* are not entitled to any specific sums of money payable irrespective of any contingency, or enforcible by judgment or money decree; nor can they invoke the stockholder's constitutional liability.

By virtue of these restrictive provisions in the certificates and by the waiver agreement, protecting the capital

and precluding any pledge of future earnings or assets, there can be no jeopardy to the rights of other depositors and creditors. Under these circumstances the basis for the court's objection to the contended-for agreement, or constructive trust, in the *Logemeyer case,* is obviated. Therefore, since the obligation herein differs not merely from the absolute waiver which the court in the *Logemeyer case* found to be the actual agreement between the parties, but also from the agreement contended for and rejected in that case, any remarks by the court in general terms with reference to agreements to pay out of future earnings are not determinative.

The instant case is also readily distinguishable from the pledge of special assets cases (*People ex rel. Nelson* v. *Wiersema State Bank, Marion* v. *Sneeden,* and *O'Connell* v. *Chicago Park District,*) where the *ultra vires* obligation of the bank withdrew assets, impaired capital, and gave a preference to the favored depositor. As hereinbefore noted, there can be no such impairment of capital or preference to any depositors under the agreement and certificates involved in the case at bar.

The agreement herein also differs from that in the *Knass case,* where the bank had an absolute obligation to repurchase the bonds at the option of the holders at some undetermined price, which would deplete its assets and impair its capital at the expense of depositors and creditors.

It is evident, therefore, that the validity of the certificates in the instant case must be determined in the absence of any binding precedent either in Illinois or in any other jurisdiction. While we are cognizant that the Iowa court in a well considered opinion in *Priest* v. *Whitney Loan & Trust Co.* 219 Iowa 1281, 261 N.W. 374, did sustain the validity of a trust certificate issued to waiving depositors by a bank pursuant to a plan of reorganization, to be paid out of collections from segregated assets and from net earnings; and that the Georgia court in *Hollingsworth* v.

*People's Bank,* 179 Ga. 812, 177 S.E. 743, sustained a re-organization agreement providing that no dividends would be claimed until the waiving depositors were paid; never-theless, these cases did not adjudicate the precise issue pre-sented herein, and decisions of other States, dependent upon varying provisions in the respective banking acts, are of limited value. 99 A.L.R. 1217.

The validity of the certificates herein depends not upon whether they are labelled a "debt," as defendant contends, or are comparable to "preferred stock," as plaintiffs sug-gest, but rather upon whether the obligations created there-under offend any statutory provision or public policy.

A bank incorporated under the legislative authority has only such powers as are expressly granted or necessarily implied from the specific grant (*People ex rel Nelson* v. *Wiersema State Bank,*) and persons dealing with a bank are chargeable with notice of its power and limitations (*Continental Illinois National Bank and Trust Co.* v. *People's Trust and Savings Bank,* 366 Ill. 366.) Plaintiffs argue that banks admittedly have power to pay their de-positors, and that under the agreement the depositors did not waive their entire right to such payment, but retained a fraction of their original rights, consequently the pay-ment provisions are within the power of the bank. Defend-ant, however, contends that under the agreement plaintiffs acquired new rights which were beyond the power of the bank to grant, and cites, in support thereof, the afore-mentioned Illinois cases which recognize limitations on the implied powers of the bank.

It is evident that in contrast to the *Knass case* and the pledge of special assets cases, the certificates herein were not issued by a going bank as part of its general banking power, but by an insolvent bank under the control of the Auditor of Public Accounts pursuant to a plan of reor-zanization. Courts have sustained and liberally construed reorganization statutes and agreements executed pursuant

thereto to enable banks to resume operation, in the interest of protecting the public and the economy. *Doty* v. *Love,* 295 U.S. 64; *Priest* v. *Whitney Loan & Trust Co.* 261 N.W. 374.

Moreover, in the aforementioned cases where the courts refused to imply the power, they emphasized that there was no evidence of a general use or custom to include the particular transactions within the scope of "general banking business." In sharp contrast, certificates payable from recoveries and net profits before the payment of dividends, such as the certificates herein, were issued to depositors by some 239 banks in Illinois, and were tacitly approved by the courts of other States. 80 A.L.R. 1487; 99 A.L.R. 1217; *Doty* v. *Love,* 295 U.S. 64.

Irrespective of the prevailing practice, the controverted payment provision of the certificate cannot be deemed to be within the implied powers of the bank if it is in derogation of public policy. That concept has been loosely defined to mean that no one may lawfully do that which has a tendency to injure the public welfare. (*People ex rel. Nelson* v. *Wiersema State Bank.*) The stability of banks vitally affects the public welfare and any plan which would impair that stability is inimical to the public welfare and, therefore, contrary to public policy.

As hereinbefore noted, the certificate was drafted to protect the capital of the bank by prohibiting any lien against the assets, or any payments on the certificates except out of profits, and then only with the consent of the Auditor, in amounts and at intervals which he approves, if there are sufficient recoveries from the frozen assets and profits. At the same time the waiving depositors are given some protection by the requirement that the certificates be paid before any dividends or other returns from the profits are paid to the stockholders.

That priority provision neither converts the status of the waiving depositors to that of preferred shareholders, as

the plaintiffs suggest, nor does it constitute a payment of the waived deposits out of dividends or impose a hardship on the stockholders, as defendant suggests. The stockholders invested with full knowledge of that priority provision; they enjoy freedom from constitutional liability on those waived deposits and have priority as to their principal as well as the benefit of the provisions protecting the bank's capital.

Since the objective of reorganization is the payment of creditors (*Doty* v. *Love,* 295 U.S. 64,) it is not unreasonable to give the certificate holders, whose waivers enabled the defendant bank to resume operations, and who are without an enforcible claim for their deposits, either against the bank or the stockholders, as compared with nonwaiving depositors who were paid in full, some assurance that they will receive payment when there are profits, so that they are not dependent upon the whim of the particular governing group who may be anxious for dividends.

On the basis of this analysis, the provision for payment of the certificates out of recoveries and net profits, as circumscribed by the restrictive provisions, effects an equitable mode of payment of the waived deposits without impairment of capital or prejudice to new depositors, creditors or stockholders, and, consequently, in no way offends public policy. Therefore, it may properly be deemed to be within the defendant bank's implied powers of reorganization.

Defendant contends further that irrespective of the validity of the certificates, plaintiffs in Group II, who surrendered their certificates in return for the 15 per cent payment, executed a binding accord and satisfaction which precludes recovery in this proceeding. To constitute a binding accord and satisfaction there must be mutual assent and consideration, and plaintiffs deny the existence of either of these elements.

The 15 per cent dividend or distribution to the certificate holders was declared out of the balance of the proceeds

of the liquidation of the so-called slow and frozen assets which had been carried in a separate account for bookkeeping purposes. The 15 per cent payment was declared on December 15, 1948, several months after the Auditor notified the bank that it had "sufficient accumulation of recoveries and profits in capital structure to make at least a 15 per cent disbursement." It was tendered in a letter to the certificate holders, which stated that under the Supreme Court decision in the *Logemeyer case,* which was binding upon defendant, the certificates were payable solely out of money realized from the liquidated assets and that the 15 per cent dividend constituted the final payment from the liquidation of the set-aside assets, but that no check for that amount would be paid without the surrender of the certificates.

It is evident that the sum was not offered, nor the surrender of the certificates requested, as a compromise of a disputed liability, or as a contractual act, but rather as the payment of a recognized and liquidated obligation, and an acknowledgment that the holder had received the balance of his ratable share in the proceeds of the assets. Therefore, no assent to a compromise of their rights could be implied from the action of the certificate holders in surrendering their certificates; such conduct was rather in response to defendant's unlawful demand based on its unwarranted interpretation of the *Logemeyer case.*

With reference to the matter of consideration, we recognize the rule obtaining in Illinois and other jurisdictions that payment by a debtor of a lesser sum as a compromise of a disputed claim may be deemed proper consideration. (*Janci* v. *Cerny,* 287 Ill. 359; *Greenberg* v. *Metropolitan Life Ins. Co.* 379 Ill. 421; 6 Corbin, Contracts, § 1289.) However, in the instant case the 15 per cent dividend represented the balance of the set-aside assets, and even under defendant's theory, plaintiffs were entitled to that sum. In

addition, plaintiffs had a contingent right to payments on their certificates from net profits, which defendant denied, and which was debatable under the *Logemeyer case.*

The payment of a sum admittedly due furnishes no consideration for the discharge of an additional disputed liability, even where such sum is accepted as full payment. (1 Restatement of Contracts, p. 85; 1 C.J.S. 502, 513; *Knight Templars and Masons Life Indemnity Co.* v. *Crayton,* 209 Ill. 550; *Klinke* v. *Great Northern Life Ins. Co.* 318 Ill. App. 43.) In the instant case the 15 per cent dividend was in no way tendered as a compromise of the bank's obligation on the certificates. On the contrary, the defendant bank was obligated to pay that dividend from the liquidated slow assets, without requiring plaintiffs to surrender their certificates. Hence, that dividend could not be deemed to be the consideration for plaintiffs of Group II relinquishing their rights to the face amount of their certificates. Therefore, since defendant gave up nothing in return for the surrender of the certificates, there could be no valid accord and satisfaction.

Without prolonging the opinion unduly, it may be noted that there are additional grounds for holding that the purported accord and satisfaction is of no legal force and effect. Not only was it the result of a mutual mistake of law as held by the Appellate Court, but it was executed without the requisite good faith for establishing such an affirmative defense. Although no true fiduciary relationship existed between the bank and its waiving depositors, the bank as a quasi-public institution (*People ex rel. Nelson* v. *Wiersema State Bank*) should be held to something "stricter than the morals of the market place." The certainty with which defendant declared its interpretation of the *Logemeyer case* as the law, without reference to any conceivable doubts, even though some 239 other Illinois banks honored such certificates, or to the Auditor's recom-

mendation that the dividend be paid merely "on account," and the sequence of statements and phraseology in the letter, designed to make the obligation in the *Logemeyer case* seem identical to its own, tended to mislead the depositors, and constituted somewhat less than the proper measure of disclosure.

In view of the foregoing considerations we cannot sustain defendant's contention that plaintiffs in Group II are barred from relief in the proceeding because of any valid accord and satisfaction.

Defendant contends further that plaintiffs are not properly entitled to institute a class action because of the conflict which exists among claimants to a ratable share of the common fund. Although refinements and distinctions have been promulgated by the courts on the subject of class actions (45 Harv. L. Rev. 1297; *Dickinson* v. *Burnham,* 197 F.2d 973; *Southeast National Bank* v. *Board of Education,* 298 Ill. App. 92,) the basic criterion is the community of interest in the subject matter and remedy.

In analyzing the basis of class suits, the U.S. Court of Appeals stated in *Weeks* v. *Bareco Oil Co*. 125 F.2d 84: "To permit the defendants to contest liability with each claimant in a single separate suit would, in many cases, give defendants an advantage which would be almost equivalent to closing the door of justice to all claimants. This is what we think the class suit practice was to prevent."

The mere fact that the *pro rata* share of a participant in a common fund is increased or decreased by the number and amount of claims against the fund does not constitute a conflict of interest between the claimants which would bar a class suit to establish the fund. *Redmond* v. *Commerce Trust Co.* 144 F.2d 140; *Heine* v. *Degen,* 362 Ill. 357, 365; *Newberry Library* v. *Board of Education,* 387 Ill. 85.

In the *Redmond case* the court, in rejecting a contention similar to that urged by defendant herein, stated: "Ap-

pellee contends this is not a class action because there is conflict of interests between the beneficiaries. * * * The petition is based upon a common and undivided obligation and liability—the preservation and proper distribution of a trust fund wherein all beneficiaries are interested in preservation of the fund and none can have legal standing to seek its distribution other than in accord with the trust indenture. The possible situation that the beneficiaries may have divergent views as to their several undivided rights in the distribution of a trust fund which is alleged to be insufficient to pay all in full does not prevent this being a class action."

In the instant case, plaintiffs of Groups I and II share a common interest in establishing the validity of the certificates, and the right of the holders to share in the net profits of the defendant bank in accordance with the terms of the certificates of beneficial interest and the waiver agreement. Each certificate holder will share *pro rata* with other holders, and all certificates are payable only out of the common fund. Consequently, the essential elements exist warranting a class suit. The fact that members of Group I are not involved in the determination of the validity of the accord and satisfaction, which defendant asserts as its special defense against Group II, does not destroy the propriety of the class suit, since it is not essential that the parties all have an interest in all the matters involved in the suit. *King* v. *Rice*, 285 Ill. 123, 128.

With reference to defendant's claim interposed for the first time in this court that the stockholders should be parties to this litigation, it is our opinion that the essential issue herein is the validity of the certificates of beneficial interest issued by the defendant bank, and that in the determination of that issue the stockholders are not necessary parties, as there is no claim asserted or allowed against them, but rather against the bank.

On the basis of our analysis of the issues presented in

46

this cause, plaintiffs are entitled to the relief sought, and the judgment of the Appellate Court reversing the decree of the trial court and remanding the cause for further proceedings is affirmed.

*Judgment affirmed.*