JOHN R. NEBEL, JR., *et al.*, Plaintiffs-Appellants, *v.* THE CITY OF CHICAGO, Defendant-Appellee.

First District (2nd Division)   No. 62872

Opinion filed September 27, 1977.—Rehearing denied November 21, 1977.

Judge & Schirott, Ltd., of Park Ridge (Jay S. Judge and James R. Schirott, of counsel), for appellants.

William R. Quinlan, Corporation Counsel, of Chicago (Daniel R. Pascale and Peter Fitzpatrick, Assistant Corporation Counsel, of counsel), for appellee.

Mr. PRESIDING JUSTICE DOWNING delivered the opinion of the court:

Plaintiff John R. Nebel, Jr. (Nebel), seeks to represent the class of all persons owning judgments outstanding against defendant, the City of Chicago (City). Plaintiff Lucy Kyle (Kyle) seeks to represent the class of all persons compelled to incur a factor's fee or to pay a discount to recover the amounts of their judgments against the City. These suits arise from an alleged policy of the City to delay payment of judgments rendered against it for 2 to 2½ years from the date of entry. The trial court granted the City's motion to dismiss plaintiffs' complaint. The issue on

appeal is whether the complaint contains sufficient allegations of the existence of a community of interest among the members of the respective classes in the subject matter of the suits and in the remedies sought to sustain a class action under Illinois law.

Count I of plaintiffs' two-count complaint alleged that Nebel obtained a judgment for $1,800 in the circuit court against the City on November 15, 1974. In spite of demands upon the City, Nebel has been unable to recover the amount of his judgment. Nebel contends that the City, relying on the doctrine of municipal governmental immunity (repudiated in *Molitor v. Kaneland Community Unit District No. 302* (1959), 18 Ill. 2d 11, 163 N.E.2d 89), has had a policy in existence since at least 1959 whereby it refuses to pay judgments against it for a period of 2 to 2½ years after entry.

Nebel prays, among other relief, for a declaratory judgment that the City's policy is, and has been, wrongful since the *Molitor* decision in 1959; for an injunction against the enforcement of the policy; for an accounting of all sums presently held by the City which are owed as judgments; for an injunction against any future actions by other individual members of the class Nebel seeks to represent; for an order that the City pay all outstanding judgments (plus 6% interest); that the City be compelled under section 2 of the Interest Act (Ill. Rev. Stat. 1973, ch. 74, par. 2) to pay an additional 5% interest on all sums of money "unreasonably and vexatiously withheld" since 1959 under the City's policy; and for an order compelling the City to segregate all funds owed as judgments in a trust fund for the benefit of the plaintiff class.

Nebel seeks to represent the class of all natural persons, firms, partnerships, associations, joint stock companies, joint venturers, public corporations, private corporations, receivers, executors, trustees, conservators, or other court-appointed representatives who have obtained, and who presently hold, judgments against the City.

Count I also alleges that the issues involved present common issues of law and fact; that there is a community of interest among the members of the class in both the subject matter of the suit and in the remedies sought; that Nebel is able to fairly and adequately represent the other members of the class; that the number of members of the plaintiff class is so numerous that their joinder as plaintiffs is impractical; that a class action is preferable to individual actions to avoid a multiplicity of suits and inconsistent judgments; that, because of the small amounts of the individual judgments, a class action is the most desirable and efficient means of resolving the entire controversy; that the remedy at law is inadequate; that the City maintains a fund from which it pays judgments rendered against it, and that the members of the class have a common interest in that fund; that records which would identify all of the members

of the class are readily available and easily obtainable from the City and from the records of the circuit court; and that the relief sought by each member of the class is identical.

Count II of the complaint sets forth basically the same allegations. It is brought by Kyle, who obtained a judgment for $3,100 against the City on August 24, 1974, on her own behalf, and on behalf of all those who have been compelled by the City's policy since 1959, to pay a discount or incur a factor's fee to recover the amount of their judgments. In addition to the relief sought in count I, count II prays that the City be ordered to pay the amounts of all discounts or factor's fees (plus interest) on all judgments since 1959 which were factored or discounted as a result of the City's policy of delay.

The City's motion to dismiss alleged that plaintiffs have failed to state a proper case for equitable relief in that a judgment creditor, absent allegation of fraud or coercion, or violation of trust, may not resort to chancery to collect the judgment; and that plaintiffs failed to allege any legal relationship between themselves and defendant which would sustain a suit in equity. It further alleges that plaintiffs' complaint does not allege a class action because it lacks many of the criteria requisite under Illinois law: there is no community of interest in the subject matter because the judgments are separate and arose from separate and diverse lawsuits; there are no common issues of law and fact between the individual plaintiffs and the other members of the respective classes because some plaintiffs obtained their own judgments, while others bought them at discount; plaintiffs cannot adequately represent the absent class members because many of them may be willing to accept the statutory rate of interest; and that there is no common fund from which relief may be given. The motion also alleges that the supreme court requires that all members of a plaintiff class must be notified of the class action. The motion prayed for dismissal of the complaint, for judgment on the pleadings, and costs.

The trial judge entered an order dismissing the complaint and awarding costs to defendant. The order recited that after considering the written motion of the City, written briefs submitted by the parties, and arguments of counsel, it had sustained defendant's motion to dismiss, and allowed plaintiffs 28 days in which to file an amended complaint. It further recited that the plaintiffs had not filed an amended complaint, electing to stand on their original complaint, and that the complaint failed to support a class action or a case for equitable relief.

I.

In this appeal, plaintiffs have argued three points. They have argued, at length, the well-settled rule that for purposes of a motion to dismiss, all

well-pleaded facts of a complaint are presumed to be true. They also argue that the allegations of a class action are, *per se*, sufficient to invoke the jurisdiction of equity. The City does not dispute either of these points. The dispute centers around plaintiffs' third argument—that their complaint alleges sufficient facts to establish a class action under Illinois law.

In this regard, plaintiffs' arguments before this court respond to the points raised by the City in its motion to dismiss, and anticipate the arguments expected to be raised by the City in this appeal. Thus, plaintiffs argue that there are five "factors" indicative, but not conclusive, of a community of interest in the subject matter and in the remedy sought, the clear requisites of a valid class action in Illinois: whether the claims of all the members of the class share a common question of law or fact, such as the existence of a common fund from which relief may be given; whether the causes of action of the members of the class arise from the same transaction; whether the individual plaintiff will adequately represent the rights and interests of the absent members of the class; whether the number of members in the class renders separate litigation impossible or impractical; and whether there exists a purely equitable cause of action. Plaintiffs maintain that a community of interest in the subject matter and in the remedy sought is established by allegations that there is a common grievance that would otherwise go unredressed, and where a common question of law or fact so predominated the controversy that it becomes practicable to dispose of the whole controversy in a single suit. While they do not actually so state, plaintiffs infer that the common issue uniting the members of the classes is the unjust enrichment of the City resulting from its unlawful policy. Once this issue has been resolved, plaintiffs maintain, there are few, if any, subsidiary issues remaining to be resolved. In addition, the plaintiffs argue that their complaint sufficiently alleges that the members of the classes are numerous, their joinder impractical; that the individual claims of members of the classes are small, making individual litigation impractical; that the City is solvent; that the names, addresses, and amount of damages to each member of the class are readily obtainable from the City's records; that the class action is the superior method of disposing of the entire controversy; and that unless the class action is allowed, the City will be unjustly enriched. Anticipating the City's arguments, plaintiffs argue at length that there is no requirement that the rights of all class members arise from the same transaction, and that there is no requirement that an identifiable common fund be in existence from which recovery may be had.

Defendant argues that there is no community of interest among the members of the classes in either the subject matter of the suit or in the

remedies sought. Defendant points to several factors as evidence of this: plaintiffs' complaint seeks to enjoin other members of the classes from taking independent action to collect their judgments and from accepting a voluntary satisfaction from the City; each judgment was obtained in a separate and individual transaction, and came into the possession of the present owners in various ways (some following a trial, some by agreed order following settlement negotiations); and plaintiffs' suit would prevent a member of the class from obtaining satisfaction of his judgment (assuming the existence of the policy as alleged) whether his payment date was two years away or one day away. In addition, defendant argues that no case law deals with a situation where a judgment creditor has attempted to represent all other judgment creditors in a class action.

Finally, defendant argues that a class action is inappropriate because each transaction through which each member of the class obtained a judgment was separate and distinct, relying heavily on *Newberry Library v. Board of Education* (1944), 387 Ill. 85, 55 N.E.2d 147, and because there is no common fund in existence from which the class might recover. In support of this last contention, defendant relies on *Peoples Store of Roseland v. McKibbin* (1942), 379 Ill. 148, 39 N.E.2d 995.

■■ The rule in Illinois is well established that to maintain a class action, there must be a community of interest among the members of the plaintiff class in both the subject matter of the suit and in the remedy sought. (See *Magro v. Continental Toyota, Inc.* (1977), 67 Ill. 2d 157, 365 N.E.2d 328.) Application of this rule is, to say the least, difficult. With access to the Federal courts severely curtailed under Rule 23 of the Federal Rules of Civil Procedure (Fed. R. Civ. P. 23; *Zahn v. International Paper Co.* (1973), 414 U.S. 291, 38 L. Ed. 2d 511, 94 S. Ct. 505; *Eisen v. Carlisle & Jacquelin* (1974), 417 U.S. 156, 40 L. Ed. 2d 732, 94 S. Ct. 2140), the resultant increase of class action litigation in the courts of our State (see *Class Actions in Illinois: Toward a More Attractive Forum for This Essential Remedy*, K. M. Forde, 26 De Paul L. Rev. 211, 213 (1977)), and because resolution of the case at bar rests squarely on the meaning of the term "community of interest," it is imperative that we re-examine the development of class actions in Illinois to determine if any new generalizations may be made in the light of recent developments.

An appropriate starting point is *Newberry Library v. Board of Education* (1944), 387 Ill. 85, 55 N.E.2d 147, where our supreme court reviewed extensively the due process implications of the class action suit. Newberry Library, the holder of a bond interest coupon upon which defendant defaulted, sued individually for payment. Defendant moved to dismiss the complaint on the basis that a pending class action suit would bind plaintiff as an absent member of the class. The trial court dismissed plaintiff's complaint, and plaintiff appealed directly to the

Illinois Supreme Court. The court considered the due process implications of binding an individual plaintiff to the decision in the class suit, and held, so far as pertinent: (1) a class suit is an invention of equity to enable it to proceed to a decree in suits where the number of those interested in the subject matter of the litigation is so great that it is impracticable to join them as parties; (2) in class actions where the interests of those joined are the same as the interests of those who are not, and when all have a common interest, the decree of the court will be binding on all members of the class; (3) to constitute a class action the subject matter of the litigation must be a common or joint interest, not only in the question involved but likewise a common interest in the remedy and subject matter of the suit itself; and (4) members of a class may represent others of that class where the sole and common interest of the entire class is to assert or challenge a claimed right; but where the substantial interests of parties present in such a suit are not necessarily or even probably the same as the interests of those they seek to represent, such parties present cannot be said to afford that protection to absent parties required by due process.

The court in *Newberry* found it necessary to assess the validity of the pending class action. It found that while all of the members of the class were owners of bonds of the same issue, the class action was improper because the purchase of each bond was a separate and distinct transaction. There was no joint action or interest among the members of the class in the purchase of each. The interest of each plaintiff was only in the collection of the interest on the bond held.

*Newberry* has been cited by the defendant herein, and by others, as establishing a "separate transaction rule." Defendant urges that the factual similarities between the case at bar and *Newberry* mandates application of the rule.

However, in *Johnson v. Halpin* (1952), 413 Ill. 257, 108 N.E.2d 429, *cert. denied* (1953), 345 U.S. 923, 97 L. Ed. 1355, 73 S. Ct. 781, *Newberry* was not even cited when the court when the upheld a class action challenging the constitutionality of the Illinois Cigarette Use Tax Act, which had imposed a tax on the use, in Illinois, of cigarettes purchased outside of the State. The individual plaintiff had purchased cigarettes by mail order from Indiana, and brought suit for a declaratory judgment and injunctive relief against enforcement of the act on her own behalf and on behalf of all others similarly situated. The court held that the plaintiff class members shared a common interest in the constitutionality of the statute, and that, since a determination as to the validity of that statute affected them all equally, a class action was properly maintained. See also *Midway Tobacco Co. v. Mahin* (1st Dist. 1976), 42 Ill. App. 3d 797, 356 N.E.2d 909.

Of additional interest in *Johnson v. Halpin* is the court's treatment of *Peoples Store of Roseland v. McKibbin* (1942), 379 Ill. 148, 39 N.E.2d 995, relied on by the defendant here. *Peoples Store* has been cited by the defendant as establishing a requirement that there be in existence a common fund from which recovery may be had before a class action may proceed. In *Peoples Store,* the court rejected a class action challenging the State's right to collect Retailers' Occupation Tax on sales of "meat, groceries, dairy products & other edibles." to public institutions on behalf of the class of persons selling such items to such institutions. The court held that beyond their common interest in having such sales exempted from the tax, the plaintiffs shared no common interest.

■■ In *Johnson v. Halpin,* the court acknowledged *Peoples Store,* but made no attempt to distinguish it. The opinion contains no reference to an existing common fund. The court summarily concluded that there was a common interest in the issue and remedy sought, and upheld the class action, in spite of the fact that each plaintiff had entered into separate and distinct transactions, that each plaintiff would have to present proof of his individual claim, and in spite of the administrative difficulties of carrying out the decree. The only conclusion which may be reached from such a ruling is that neither the absence of a common fund nor the fact that individual plaintiffs obtained their right to recover against defendant in separate and distinct transactions is an absolute bar to a class action suit.

*Smyth v. Kaspar American State Bank* (1956), 9 Ill. 2d 27, 136 N.E.2d 796, grew out of a bank reorganization during the 1930's depression. In exchange for the execution of an agreement waiving 60% of the amount of deposits to their credit, depositors were issued "certificates of beneficial interest," under which the bank was obligated to make payments "solely out of the future recoveries and net profits" of the bank and the sale of certain assets designated as "slow" assets. The bank made a number of payments under the certificates. Several years later, the bank sent a letter to certificate holders informing them that under their interpretation of an Illinois Supreme Court decision (not relevant to our discussion here), they could make no more payments out of future earnings. The letter informed certificate holders that one final distribution would be made (of funds received through the liquidation of the "slow" assets) in exchange for cancellation and return of the certificates. Most of the certificate holders accepted the "final" distribution and returned their cancelled certificates. A class action was then filed on behalf of two classes of plaintiff—those who had accepted the payment and cancelled their certificates, and those who retained their certificates, refusing to accept payment. The court upheld the class action as to both classes. As to the first class, the court held there was no valid accord and satisfaction because the bank, already

obligated by its contract to make distributions under the certificates, could not impose the additional condition that the certificate be cancelled and returned.

In *Smyth*, as in *Newberry* and *Johnson v. Halpin*, each plaintiff member of the class engaged in a separate and distinct transaction with the defendant. In contrast to *Newberry*, a class action was upheld.

The court in *Smyth* then modified the separate transaction rule so that minor conflicts in the interests of the various individual members of the respective plaintiff classes (which do not affect the defendant's liability) do not affect the validity of the class action. The court quoted the following language from *Weeks v. Bareco Oil Co.* (7th Cir. 1941), 125 F.2d 84, 90:

> To permit the defendants to contest liability with each claimant in a single separate suit would, in many cases, give defendants an advantage which would be almost equivalent to closing the door of justice to all claimants. This is what we think the class suit practice was to prevent. 9 Ill. 2d 27, 44.

Class actions were also upheld in *Cohon v. Oscar L. Paris Co.* (1st Dist. 1958), 17 Ill. App. 2d 21, 149 N.E.2d 472, and in *Harrison Sheet Steel Co. v. Lyons* (1959), 15 Ill. 2d 532, 155 N.E.2d 595. In both cases, sellers of personal property had obtained refunds of amounts paid under the Retailers' Occupation Tax Act. In both cases, a customer from whom the seller had collected a sum designated as a tax, brought a class action to recover the amounts paid to the seller. (15 Ill. 2d 532, 533.) In *Cohon*, this court upheld the class action, citing *Smyth* and *Kimbrough v. Parker* (1st Dist. 1951), 344 Ill. App. 483, 101 N.E.2d 617. The court also distinguished *Peoples Store*. In *Harrison*, the supreme court cited *Smyth* for the general rule that a basic criterion for a class action is a community of interest in the subject matter and the remedy. The court found that the subject matter of the suit was the fund of money received by the defendant from the State under the decree ordering a refund of the taxes paid under protest. The remedy sought was the declaration of a constructive trust so that the refund could be distributed to those to whom it rightfully belonged. The court distinguished *Peoples Store*, noting that in this case, unlike *Peoples Store*, there was a common fund from which repayment could be made, as well as common legal and factual issues. (15 Ill. 2d 532, 538.) The court went on to state:

> "The [defendant] also contends that there is a possibility that individual questions may arise between itself and the members of the class. But the hypothetical existence of individual issues is not a sufficient reason to deny the right to bring a class action. Where it appears that the common issue is dominant and pervasive, something more than the assertion of hypothetical variations of a

minor character should be required to bar the action. * * * The [defendant's] opportunity to defend any individual issues that may arise will not be impaired, and it can hardly be said that it will suffer greater inconvenience by litigating those issues in a single action instead of in separate actions." 15 Ill. 2d 532, 538.

*Fiorito v. Jones* (1968), 39 Ill. 2d 531, 236 N.E.2d 698, was a class action suit challenging the constitutionality of the 1967 amendments to the Service Occupation Tax Act, the Service Use Tax Act, and the Municipal and County Service Occupation Tax Acts. Unlike *Peoples Store,* the trial court entered an order that defendants impound the taxes collected and segregate them from the general revenue fund. The amendments were declared unconstitutional, and the class action upheld, in spite of the fact that there were thousands of potential claimants to a very large fund. The court noted that, as in *Harrison Sheet Steel,* there was a common fund, as well as common factual and legal issues uniting the members of the class, the most important of which was the constitutionality of the amendments. The court also noted that:

"[I]n view of this dominant issue, the differences which defendants contend exist between members of the class with respect to their right and amount of recovery from the fund are not sufficient to bar the instant action." 39 Ill. 2d 531, 544.

In *Moseid v. McDonough* (1st Dist. 1968), 103 Ill. App. 2d 23, 243 N.E.2d 394, this court upheld a class action by a class consisting of all defendants who appeared in civil cases and were required, under the County Law Library Act, to pay a one dollar library fee. The suit also challenged the constitutionality of the act. A temporary injunction ordered that all funds collected in such manner be segregated and held pending outcome of the litigation. The court's opinion commenced its discussion of the class action issue with a summary of the applicable law:

"[T]he test to be applied is the existence of a community of interest in the subject matter and a community of interest in the remedy among all who make up the purported class. Cohon v. Oscar L. Paris Co., 17 Ill App2d 21, 149 NE2d 472; Johnson v. Halpin, 413 Ill 257, 108 NE.2d 429; Harrison Sheet Steel Co. v. Lyons, 15 Ill2d 532, 155 NE2d 595; Smyth v. Kaspar American State Bank, 9 Ill2d 27, 136 NE2d 796; Flanagan v. City of Chicago, 311 Ill App 135, 160, 35 NE2d 545. Factors to be considered in applying this test are: whether the claims of all members of the class share a common question of law and fact, such as the existence of a common fund from which relief can be given (Kimbrough v. Parker, 344 Ill App 483, 486, 101 NE2d 617; Flanagan v. City of Chicago, 311 Ill App 135, 160, 35 NE2d 545); whether the causes of action of the members of the class arise from the same transaction (Peoples

Store of Roseland v. McKibbin, 379 Ill 148, 154, 39 NE2d 995; Material Service Corp. v. McKibbin, 380 Ill 226, 236, 43 NE2d 939); whether one party can adequately represent the rights and interests of all other members of the purported class (Newberry Library v. Board of Education, 387 Ill 85, 90, 55 NE2d 147); whether the number of possible class members renders separate litigation impossible or impractical (South East Nat. Bank of Chicago v. Board of Education, 298 Ill App 92, 114, 18 NE2d 584); and whether there exists a purely equitable cause of action (Fetherston v. National Republic Bancorporation, 280 Ill App 151, 160)." 103 Ill App 2d 23, 27.

There were two main points on which the class action in *Moseid* was challenged. The first was that there was no community of interest in a common fund or right of recovery. The court pointed out that the statute in question established a separate, identifiable fund into which the proceeds of the library fee were placed. In addition, the trial court had ordered the further segregation of such funds collected from the plaintiffs. Thus, there was a common fund and a common right of recovery in each plaintiff. The second point was that a community of interest in the subject matter was lacking because the payment of the fee by each plaintiff was a separate transaction, citing *Newberry*. The court distinguished *Newberry* on the basis that here the individual claims had a common origin. This, plus the common fund was held to be a sufficient community of interest to allow the class action.

In *Reardon v. Ford Motor Co.* (3d Dist. 1972), 7 Ill. App. 3d 338, 287 N.E.2d 519, the court denied the right of owners of three Ford-built cars to represent a class of over four million persons owning Ford-built cars bearing similar design defects. The court relied heavily on *Newberry* and on *Peoples Store* in arriving at its decision. The court found no community of interest among four million persons across the nation owning cars purchased in separate and distinct transactions, on different terms. As to the common fund, the court stated:

"We do not deem it to be mandatory that there be *in esse* a common fund in every instance if a class action is to be sustained for we are aware of the many cases where such an action was permitted in the absence of such a fund. Without recounting the cases it is suffice to say that none of them had factual situations that were in any way similar or comparable to that which is present in the instant case. For the plaintiffs to prevail in the case now before us we hold the existence of a common fund to be a necessary requisite.* * *" 7 Ill. App. 3d 338, 344-45.

The issue of whether or not a common fund is required was discussed in this court's decision in *Perlman v. First National Bank* (1st Dist. 1973),

15 Ill. App. 3d 784, 305 N.E.2d 236, *appeal dismissed*, 60 Ill. 2d 529 (1975). *Perlman* was a class action by bank customers allegedly overcharged interest by the bank's practice of computing interest on the basis of a 360-day (as opposed to a 365-day) year. The bank contended that a class action was unwarranted because there was no common fund. The court held that a sequestered sum of money, *per se*, was not required to maintain a class action.[1]

The issue in *Rodriguez v. Credit Systems Specialists, Inc.* (1st Dist. 1974), 17 Ill. App. 3d 606, 308 N.E.2d 342, was whether separate transactions with defendant by each plaintiff member of the class was a bar to a class action. The court noted that the cases (particularly *Newberry* and *Fiorito*) disagreed as to whether a community of interest exists in such a situation, but found that a community of interest existed among the class of plaintiffs being considered, each of whom had separately contracted for, and been overcharged for, the defendant's services. This court resolved the apparent conflict in the cases by stating:

> "[T]he better view seems to be that notwithstanding whether separate transactions are involved, the existence of a community of interest must be determined in each case from the nature of the action according to the difficulties of administering justice through the medium of a class action as compared with those involved in separate suits."

Two recent supreme court cases will complete our review of the class action in Illinois: *Hagerty v. General Motors Corp.* (1974), 59 Ill. 2d 52, 319 N.E.2d 5, and *Magro v. Continental Toyota, Inc.* (1977), 67 Ill. 2d 157, 365 N.E.2d 328.

*Hagerty* was a class action suit which, in the supreme court's words, involved "problems that stem from the relationship between Illinois' basic 'sales' tax—the Retailers' Occupation Tax Act—and other taxes designed to protect that basic tax from erosion." (59 Ill. 2d 52, 54.) The plaintiff had authorized defendant to install certain parts on her car and to perform certain repair work. Her complaint alleged that defendant had incorrectly charged her according to the Use Tax Act rates, rather than a lesser amount under the Service Use Tax Act. Plaintiff sought an injunction, an accounting, and refund of overpayments for herself and all others similarly situated. The defendant answered the complaint, moved to strike the class action allegations, and moved to dismiss the complaint. The trial court struck the class action allegations, and denied plaintiff an

---

[1] On further appeal, the supreme court was unable to reach a consensus in *Perlman,* after two of the justices recused themselves from consideration of the case. The appeal was dismissed in a *per curiam* decision (Justice Underwood dissenting). The court noted that while the effect of such a disposition was that of an affirmance as between the parties to the case, it is not authority for the determination of other cases, and not entitled to precedential weight. 60 Ill. 2d 529, 530.

accounting, but entered judgment for $0.33 on her individual claim. The trial court also ordered that if defendant persisted in the practice of overcharging, it must pay one-half of the amounts collected into a protest fund to be maintained by the State Treasurer. We reversed. 14 Ill. App. 3d 33.

On further appeal, the supreme court again reversed, affirming the decision of the trial court. It found no community of interest in either the subject matter or the remedy because the nature of the tax structure would require a determination, in each case, as to whether the sale of automobile parts was a sale at retail or a sale incident to a service. 59 Ill. 2d 52, 58-59.

In *Magro*, the plaintiff sought injunctive and other relief on his own behalf and on behalf of all others whose cars had been serviced by the defendant, and who had been charged a service occupation tax based incorrectly on the *retail* price of parts installed, rather than on the *cost* price. The trial court denied a motion by the defendant to dismiss the complaint, and we affirmed (37 Ill. App. 3d 1, 344 N.E.2d 675) based in part on the fact that each plaintiff in the class had been issued a common automotive dealer's receipt by defendant listing the charges for service and for replacement parts separately. We concluded that although each of the individual claims of the plaintiff members of the class arose from different transactions, the receipt would facilitate a simple determination of whether the tax should have been applied to the retail price of the parts installed, or the cost price. The supreme court disagreed and reversed, holding that the case was controlled by *Hagerty* (*Magro v. Continental Toyota, Inc.* (1977), 67 Ill. 2d 157, 162-64), and that to resolve the issue, it would be necessary to determine, in each case, whether the transfer of personal property from the defendant to the plaintiff was a sale at retail, a transfer incident to a sale of service, or a combination of both. A decision sustaining Magro's claim against defendant would not establish whether defendant had similarly overcharged other customers.

■■ The foregoing review of the history of class actions in Illinois permits us to make the following generalizations as a guide to our decision in the case at bar: (1) it may be said that a class action is permissible where there is a common question of law or fact which is so predominant that it becomes practicable to dispose of the entire controversy in a single proceeding; (2) there must be a community of interest in the subject matter of the suit and in the remedy sought; (3) a community of interest is whatever grievance unites the members of the class against the defendant, but it must predominate; (4) an issue is predominant if it is so important that, in a very practical effect, it disposes of the entire controversy, leaving only minor issues to be resolved in individual circumstances; and (5) there is no absolute requirement that the members of the class have pre-existing relationships among

themselves, that a common fund be in existence, or that the individual claims arise from one transaction or multiple related transactions. Such factors are, however, an indication that a class action may be the best way to dispose of all of the issues raised.

■■■ We think that the present action may proceed as a class action as to that class of persons holding outstanding judgments against the City represented by plaintiff Nebel. There are common questions of law and fact, namely: whether in fact defendant has a policy of delaying the payment of judgments for a period of 2 to 2½ years after entry; if so, whether that policy is unlawful. Every member of the class shares a common grievance, or community of interest, against the defendant: the inability to receive timely payment of valid judgments from defendant. Each plaintiff has a common interest in the remedy sought: an injunction against the defendant's policy and the prompt payment of all outstanding judgments. Minor differences in the interests of the various plaintiffs do not bar a class action, and may be accommodated by any decree which may ultimately be fashioned by the trial court. Plaintiff's complaint also alleged the existence of a fund from which the City pays judgments (Nebel will, of course, bear the burden of proving his allegations upon the trial of this case). The identity of, and amounts owing to, the individual plaintiffs are readily available in two forms: the records of the defendant, and the records of the courts. Defendant will suffer no prejudice by being forced to litigate the issues raised in a single lawsuit.

■■ The same does not apply, however, to the class of plaintiffs, represented by Lucy Kyle, who have discounted their judgments or incurred a factor's fee. While count II of plaintiffs' complaint alleges that the named plaintiff and the class of persons she seeks to represent were forced to discount or factor their judgments as a result of the City's policy, a resolution of that factual issue in Kyle's favor is not conclusive as to anyone else. There may well have been other factors motivating such a course of action. Each plaintiff, therefore, would have to present individual proof of the circumstances under which he transferred his judgment so that it could be determined whether the factor motivating the transfer was the coercive effect of the City's alleged policy. It would thus be impractical to try this aspect of the case as a class action.

Accordingly, that portion of the order of the circuit court dismissing the class action allegations of count I of plaintiffs' complaint is reversed. That portion of the order dismissing the class action allegations of count II is affirmed. That part of the order finding that the complaint fails to state a case for equitable relief is reversed.

Affirmed in part, reversed in part.

STAMOS and PERLIN, JJ., concur.